[No. 2725. Nov. 17, 1923.]

HOSKINS v. TALLEY et al.

### SYLLABUS BY THE COURT

1. One who holds uninterrupted, continuous, adverse possession, for 10 years or more, of lands which have been granted by the governments of Spain, Mexico or the United States, thereby acquires complete title thereto, and also defeats the right of the prior owner to effectually maintain a suit to recover the same.

2. Findings of fact which are not supported by substantial evidence cannot be upheld upon appeal.

3. Facts which establish estoppel in pais must ordinarily be pleaded, but this need not be done in a suit to quiet title where the plaintiff does not set forth nor plead in his complaint the precise claim of title which will be relied upon, nor the muniments establishing the same. In such case, facts establishing such estoppel may be proven under the general issue.

4. When a person has acquired complete title to lands by adverse possession, and afterwards verbally recognizes the tit e of the prior owner and verbally agrees to accept from such prior owner a deed to a part of such lands, in consideration of which she verbally agrees to waive her claim to the remainder, such person does not thereby divest herself of such title nor invest the same in such prior owner, and such acts cannot estop the holder of such title by adverse possession, nor those claiming under her, to assert the same.

Appeal from District Court, San Miguel County; Leahy, Judge.

Suit by Daniel T. Hoskins, trustee, against John Archer Talley and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded, with directions.

W. J. Lucas, of East Las Vegas, for appellants.

Luis E. Armijo, of Las Vegas, and O. O. Askren, of East Las Vegas, for appellee.

### OPINION OF THE COURT

BRATTON, J. This suit was instituted by the ap-

pellee, Daniel Hoskins, trustee, against the appellants, John Archer Talley and Pauline C. Pettys, to quiet title to two certain described tracts of land situated within the Las Vegas Grant, the first of which contains 180 acres, and the second of which contains 173.10 acres. Appellants by answer denied appellee's title, and by cross-complaint specifically pleaded title in themselves by adverse possession under the statute of limitations, by setting forth that they and their predecessors in interest had, in good faith and under color of title, held the continuous, complete, exclusive, and hostile possession of such lands for more than 25 years next preceding the filing of such cross-complaint, during which time they had regularly paid all taxes levied and assessed against the same. Appellee filed his amended answer to such cross-complaint, in which he denied the title of the appellants, and further pleaded that they were estopped to assert such title by virtue of a certain agreement had between Cora Archibald, under whom they claim, and the board of trustees of the town of Las Vegas. who was then administering the affairs of such grant. The trial resulted in a decree by which appellee's title was quieted, and by which the appellants were denied any relief under their cross-complaint. From such decree this appeal has been perfected.

While somewhat reverse to the order in which counsel have presented the questions involved, we will first dispose of the appellant's contention that the finding of the trial court that they, and their predecessors in interest, had not held actual adverse possession of the lands involved, under color of title, for 10 years or more, prior to the commencement of this suit, is not supported by any substantial evidence. In determining this question, we recognize the often repeated rule that findings of fact made by the trial court, which are supported by substantial evidence, will not be disturbed on appeal. We have carefully and repeatedly read the record in this case, and have concluded this contention

must be sustained. The overwhelming and undisputed facts shown in the record disclose that Cora Talley, subsequently Cora Archibald, under whom appellants claim, acquired deeds to such lands during the year 1889; that such deeds were filed for record during that year; that such lands were substantially inclosed with fence during that year; that such fence remained in the same place and position until during the year 1903, or within two or three years thereafter, when the string along the eastern boundary line which ran in a northeasterly and southwesterly direction was moved, there being considerable dispute in the evidence with regard to the exact place to which it was then moved; later and during the year 1910, this fence was again moved from the place to which it was first moved to the west side of the Mora road. It is agreed by all parties, however, that by such change in 1910 it was moved in an easterly direction 680 yards at its north end, and that at the southeast corner of the tract, being the south end of the fence, it remained where it was originally. Otherwise the fence which surrounded the tract has not been moved, changed, or molested since its erection, but has been kept in good condition by being repaired from time to time. During all of this time—that is, from 1889 to 1903, or some time thereafter—Mrs. Archibald held actual possession of such lands, having them fenced, leasing them for grazing purposes, and otherwise exercising full and complete ownership and dominion over the same, and during such time the land was generally reputed and considered by those residing in that community to belong to Mrs. Archibald. It is admitted that the appellants and their predecessors in interest paid all the taxes levied thereon during the years 1889 to 1918.

Section 2937, of the Compiled Laws of 1897, which was in force and effect during practically all of this period of time, and which controls because the land is situated within a grant, provided:

"In all cases where any person or persons, their children,

Hoskins v. Talley et al., 29 N. M. 173.

heirs or assigns, shall at the passing of this act or at any time after, having had possession for ten years of any lands, tenements or hereditaments which have been granted by the governments of Spain, Mexico or the United States, or by whatsoever authority empowered by said governments to make grants to lands, holding or claiming the same by virtue of a deed or deeds of conveyance, devise, grant or other assurance purporting to convey an estate in fee simple, and no claim by suit in law or equity effectually prosecuted shall have been set up or made to the said lands, tenements or hereditaments, within the aforesaid time of ten years, then and in that case, the person or persons, their children, heirs or assigns, so holding possession as aforesaid, shall be entitled to keep and hold in possession such quantity of lands as shall be specified and decribed in his, her or their deed of conveyance, devise, grant or other assurance as aforesaid, in preference to all, and against all, and all manner of person or persons whatsoever; and any person or persons, their children, or their heirs or assigns, who shall neglect or who have neglected for the said term of ten years, to avail themselves of the benefit of any title, legal or equitable, which he. she or they may have to any lands, tenements or hereditaments, within this territory, by suit of law or equity effectually prosecuted against the person or persons so as aforesaid in possession, shall be forever barred, and the person or persons, their children, heirs or assigns so holding or keeping possession as aforesaid by the term of ten years, shall have a good and indefeasible title in fee simple to such lands, tenements or hereditaments: Provided, that if any person or persons that have been, are, or shall be entitled to commence and prosecute such suit in law or equity, shall have been, be, or shall be. at the time of said right or title first descended, or accrued, come or fallen within the age of twenty-one years, feme covert, non compos mentis, imprisoned, or beyond the limits of the United States, and the territories thereof, that then such person or persons, his, her or their children, heirs or assigns shall or may, notwithstanding the ten years be expired, bring his or her legal or equitable action, as he, she or they might have done before the passage of this act, so as such person or persons, or his, her or their children, heirs or assigns. shall within three years next after his, her or their full age, discoverture, coming of sound mind, enlargement out of prison, coming into the United States or the territories thereof. or death, take benefit of and commence such suit, and at no time after the said three years: Provided, also, that in the construction of this saving provision, no cumulative disability shall prevent the bar aforesaid, but shall only apply to that or those disabilities which existed when the right to sue first accrued, and no other: And provided, also, that such suit so commenced shall be a suit prosecuted with effect, and no other."

This statute was slightly amended by chapter 63, Laws of 1899, § 1, which is now section 3364, Code

1915. The amendment so made, however, refers solely to certain disabilities, and the time within which such suits may be instituted after the removal thereof. Its provisions are not material to this case.

[1] The appellants having shown by this undisputed evidence that their predecessor in title, Cora Archibald, had so continuously and uninterruptedly occupied and exercised full and complete possession, dominion, and manifestation of ownership, under color of title, for more than the required time prior to the institution of this suit, which was commenced on March 20, 1916, both defeated the right of the appellee to effectually maintain this suit, and established their title to the lands involved, unless they are estopped under the facts which will be hereinafter discussed. Manby v. Voorhees, 27 N. M. 511, 203 Pac. 543. Having taken such possession, and begun such acts constituting adverse possession during the year 1889, her title ripened into complete ownership during the year 1899, and the subsequent changes which may have been made in the location of the eastern boundary line fence are immaterial, as the facts thus outlined clearly show such acts are sufficient to establish adverse possession which will within the time required by law ripen into perfect ownership. In Baker v. Trujillo De Armijo, 17 N. M. 383, 128 Pac. 73, it is said:

"It has been settled that to constitute an adverse possession there need not be a fence, building or other improvement made; it sufficing, for this purpose, that visible and notorious acts of ownership be exercised, for the statutory period, after an entry under claim and color of title. Ewing v. Burnett. 11 Pac. 19, 9 L. Ed. 628. The uses to which the property can be applied, or to which the owner, or claimant may choose to apply it, the nature of the property and its situation are largely controlling factors in determining what acts of ownership might be considered requisite to the assertion of an adverse claim.

"In the case at bar, the property is an unimproved city lot, which the claimants, in possession, fenced on several occasions, but which apparently it was found difficult to keep fenced. The lot was frequently rented for circuses, carnivals, bill boards, temporary photographers, stands, storage of pipe and other temporary uses.

"The trial court having found that this evidence was such as to indicate acts of ownership constituting adverse possession, we are not disposed to disturb the finding.

"It has been said in the case of Draper v. Shoot, 25 Mo. 197, that 'What is adverse possession is one thing in a populous country, another thing in a sparsely settled one, and still a different thing in a town or village.' It has also been held that less notoriety, and even less frequency of such acts of ownership will be required with possession under color of title than without it. Woods v. Montevallo Co., 84 Ala. 566.

"In the case last referred to the court also says: 'All the law requires therefore, is that the possession, or rather acts of dominion by which it is sought to be proved, shall be of such a character as may be reasonably expected to inform the true owner of the fact of possession and an adverse claim of title.' "

[2] The court should have, upon the evidence, found that appellants and their predecessor in interest had held actual adverse possession of such land, as contemplated by the statute hereinbefore referred to, for more than ten years prior to the institution of this suit. The finding to the contrary which is not supported by substantial evidence cannot be upheld on appeal. Epstein v. Waas, 28 N. M. 608, 216 Pac. 506.

It is next urged with much vigor that the trial court erred in permitting the appellee to file his amended answer to the cross-complaint of the appellants. By such cross-complaint they pleaded title in themselves by adverse possession, under color of title, and prayed that such title be quieted. To this pleading, the appellant answered with a general denial. With the pleadings in this condition, the cause came on for trial, at which the appellee introduced a stipulation of counsel which established his prima facie title. The appellants then submitted their evidence hereinbefore referred to by which they sought to establish their title by adverse possession. After having done this, they rested their case, whereupon appellee requested and was granted a postponement of the cause for one week. When it was again reached and called for the purpose of completing the trial, the appellee filed the amended answer, which contained the same general denial contained in the

original answer, and, in addition thereto, charged that during the year 1907 Mrs. Archibald was making claim to certain lands situated within the grant, which contained about 400 acres; that she then sought to have the board of trustees of the town of Las Vegas, who was then administering the affairs of the Las Vegas Grant, recognize her claim, which recognition was being rejected; that she appeared before such board and agreed to accept a deed of conveyance from it, conveying to her 160 acres of land situated within such 400-acre tract, in consideration of which she agreed to waive her said claim to the remainder of the tract, which included the lands in controversy; that such offer was accepted, and pursuant thereto the said board executed and delivered to her said deed, which she accepted and has ever since retained; and that by virtue thereof the appellants are estopped from claiming title by adverse possession. It is contended that the amended answer changed the issues and interposed a new defense to the cross-complaint. If the amendment was necessary to properly present the issue and make the evidence admissible, we would concur in the contention. The authority of the court to permit amendments to be filed during the trial is derived from section 4162, Code 1915, which is in the following language:

"This court may, at any time before final judgment, in furtherance of justice, and on such terms as may be proper, amend any record, pleading, process, entry, return or other proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of the party, or mistake in any other respect, or by inserting other allegations, material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved."

A careful consideration of the language of the statute reveals that the power of the court in this respect is limited to the filing of such amendments as do not substantially change the plaintiff's cause of action, or the defense interposed by the defendant. By the very terms of the statute the court has no power to permit

amendments to be made during the trial, or afterwards, and before judgment is rendered, which make any substantial change in such cause of action or defense. This has been the interpretation given to this statute by this court. Loretto Literary Society v. Garcia, 18 N. M. 318, 136 Pac. 858.

[3] We are of the opinion, however, that proof establishing estoppel in pais in this kind of a case is admissible and the issue may be litigated under the general issue tendered by a general denial. Section 4388, Code 1915, which prescribes the contents of a complaint in suits to quiet title, does not require the source of the title, nor the muniments thereof, to be set forth. It merely requires that the plaintiff state the ultimate fact of his ownership, that is, whether he claims a fee-simple estate, a life interest, or some other interest of a different character. Oliver v. Enriquez, 17 N. M. 206, 124 Pac. 798. The cross-complaint of the appellant is in this form. The general rule is that facts establishing estoppel in pais must be specially pleaded, but there is a well-defined exception to this general rule, which has been frequently applied in cases in ejectment. In such cases it is generally held to be unnecessary to specially plead such estoppel, and the proof thereof is properly admitted under the general issue. The reason which underlies such exception is that ordinarily a plaintiff in ejectment is not required to plead the title upon which he relies for his right of possession, and the facts upon which he relies to establish such title are unknown to the defendant until proof is submitted. In 10 R. C. L. 843, it is said:

"An exception to the general rule is recognized in actions to try title to land. In ejectment and in the statutory substitutes therefor which obtain in some jurisdictions, a declaration in general terms is usually authorized, and it is not necessary to state the basis of plaintiff's alleged title. So in view of the impossibility of anticipating from such pleading the precise claim of title which will be made at the trial, the defendant need not specially plead facts in pais estopping the plaintiff from asserting title, but may show such facts under a plea of the general issue."

The many cases which support this text may be found in the notes appended to Fitch v. Walsh, Ann. Cas. 1914C, 1136, and Chilton v. Mining Co., L. R. A. 1918F, 243 (257).

The reason for this exception to the general rule, which has been so many times declared in these cases of ejectment, is equally applicable in this case. It being unnecessary for the plaintiff to plead his title, and it being impossible for the defendant to anticipate the precise claim of title which will be relied upon, nor the muniments thereof, which will be submitted in evidence, it is manifest that he cannot know, in advance of the trial, what title he will be required to resist. For such reason he is unable to plead in advance facts which might establish estoppel in pais. He does not know whether they will be applicable until the plaintiff has submitted his evidence. For this reason we conclude that facts relied upon to establish estoppel may be introduced under the general issue in a case brought to quiet title, wherein the plaintiff does not set forth in detail in his complaint the claim of title he relies upon. Manifestly, therefore, the amendment did not prejudicially affect the appellants.

[4] But one question remains. The trial court found that during 1907 Mrs. Cora Archibald made and entered into the agreement with the board of trustees of the town of Las Vegas, acting for and on behalf of the Las Vegas Grant, as set forth in the appellee's amended answer, hereinbefore stated. Predicated upon this finding, the court concluded that thereby Mrs. Archibald recognized the title of the said board acting in such capacity in and to the land in question, and thereby waived her claim, right, and title thereto, and hence the appellants, who claim under her, were estopped to plead their title by adverse possession. The correctness of this conclusion is assailed by the appellants. We have previously reviewed the evidence and held that Mrs. Archibald's title to this land ripened

into complete ownership by adverse possession, during the year 1899, so that, at the time the agreement we now have under consideration was made, she owned the fee to the lands involved, and the claim of the board of trustees. was without foundation. The fact that she held continuous, adverse, possession of such land, under color of title, for 10 years or more, divested the board of trustees of its title to the land, and invested the same in Mrs. Archibald, and the mere fact that by this agreement she verbally recognized the justness of its claim, and verbally agreed to waive her claim of ownership, did not divest her of the title so acquired, nor did it invest such title in the board. Neither did such agreement estop her from asserting her ownership of the land. It could only operate as an admission or circumstance to be considered by the court in determining the character of her possession; that is, whether it was adverse and hostile.

In Shirey v. Whitlow, 80 Ark. 444, 97 S. W. 444, the defendant, who held by adverse possession, had, after holding the required time, offered to buy the land from the plaintiff. The trial court instructed the jury that such action on his part would, if proven, deprive him of his claim of ownership. In reversing the cause the Supreme Court of Arkansas said:

"This offer to purchase was, to a certain extent a recognition of plaintiff's claim, but, at the time it was made, the defendant had already been in possession of the land for over seven years. This continuous possession for the statutory period, if adverse, divested plaintiff and his grantor of the title, and gave it to defendant, and the mere fact that defendant afterwards, in conversation with plaintiff, recognized the justness of his claim to the land did not divest the title from defendant nor estop him from asserting such title."

This case was followed in Hudson et al. v. Stillwell, 80 Ark. 575, 98 S. W. 356, wherein it is said:

"The evidence established that the occupancy by the ancestor of the defendants began more than 25 years before the commencement of this action, and, if it was adverse, it ripened into title by limitations more than seven years before

the commencement of the action. If the occupancy was adverse for the statutory period it operated as a complete investiture of title and a subsequent executory agreement to readjust the boundary lines, or any other act done in recognition of the validity of plaintiff's claim to the land would not remove the statute bar and reinvest the title."

And in the quite recent case of Blackburn v. Coffee, 142 Ark. 426, 218 S. W. 836, the facts were that the plaintiff, Blackburn, held the paper title while the defendant, Coffee, held by adverse possession. After the statutory period had elapsed and the controversy between them had arisen, and shortly before the action was commenced, Coffee agreed to pay Blackburn $500 for the land in controversy, but later declined to do so. Upon this phase of the case the court said:

"This offer to purchase from Blackburn by Coffee would be, to a certain extent, a recognition of Blackburn's claim, and would have a tendency to show that Coffee's possession was not adverse, if it had occurred before the statutory period had run and the title by adverse possession had been acquired. But if at the time it was made Coffee's grantors had already been in possession of the land for over seven years, claiming to hold it adversely, and had thereby become vested with the title by limitation, a mere recognition of Blackburn's title could not revest the title in him when the title had already been acquired by another by adverse possession. This court has expressly held that recognition of another's title after the full statutory period has elapsed will not have that effect."

To the same effect, see Hutt v. Smith, 118 Ark. 10, 175 S. W. 399; Cassidy v. Lenahan et al., 294 Ill. 503, 128 N. E. 544; Graves v. Graves et al. (Tex. Civ. App.) 192 S. W. 1105; Brown et al. v. Fisher (Tex. Civ. App.) 193 S. W. 357; Gutierrez v. Cuellar et al. (Tex. Civ. App.) 236 S. W. 497; Reader et al. v. Williams (Mo. Sup.) 216 S. W. 738.

While such an admission by the holder of title by adverse possession may be considered in determining the character of such possession—that is, whether it was adverse and had the elements which, under the statute, could ripen into ownership—yet such admission alone cannot of itself defeat the title of its holder. Under this rule, the admission or recognition by Mrs.

Archibald of the title of the board of trustees acting for and on behalf of the grant is insufficient within itself to deprive her of such title.

"Where title has become perfect by adverse possession for the statutory period, it is not lost by an admission by the holder that the possession was not adverse, although the admission is in writing; or by confession that the disseizin was committed with fraudulent intent, and fraudulently concealed until the expiration of the time limited by the statute; or by an admission of defects or infirmities in the title under which the holder held adversely; or by a subsequent recognition of a previous title which, originally rightful, has lost that character by a delay to enforce it; or by an agreement to join in a survey to ascertain boundaries or to readjust the boundary lines; or by taking a lease from the original owner; or by offering to purchase any right which the holder of the paper title may have; or by an agreement of the adverse holder to surrender the land to the former owner provided his cotenant will join therein, or by an offer to buy up an outstanding claim; or by a mere offer to redeem by an execution debtor who has been suffered to remain in possession for more than the statutory period; or by an acceptance of a deed or by an attempt to acquire title from a third person; or by patenting a portion of the land as vacant land; or by negotiations for the purpose of quieting title." 2 C. J. § 560, p 256.

And in Cochran et al. v. Hiden et al., 130 Va. 123, 107 S. E. 708, the Supreme Court of Virginia said:

"The adverse possession of Hiden had existed for the statutory period of 15 years after the death of Mrs. Cochran in March, 1902, and his title by adverse possession was perfected before the letter in question was written or the notice in question was given. He was the owner of the property in fee, under the title by adverse possession, when the letter was written and the notice was given. Whether the letter was written and the notice was given on the part of Hiden under a misapprehension of fact, or of his legal rights, is immaterial It could not of itself operate to divest him of his title to the land. Even if such action amounted to an admission by Hiden that the title to the land was not in himself at that time, and that the rights of appellants asserted in the bill were still in existence, that would not of itself have been sufficient to defeat Hiden's title."

Where title to land is complete, having been acquired by adverse possession in the manner required by the statute, it is the same as when acquired by deed as prescribed by the statute of frauds, and it can be conveyed

or passed to another only in the same manner that lands acquired by deed may be passed, namely, by a conveyance in writing, or by subsequent adverse possession on the part of another. To permit it to be conveyed by merely verbally recognizing the title of another would violate the statute of frauds. In McInnis et ux. v. Day Lumber Co., 102 Wash. 38, 172 Pac. 844, it is said:

"A title or easement right in real property is no different when acquired by adverse possession or use than when acquired by formal grant in the manner prescribed by the statute of frauds. It seems to follow as a matter of course that such title or right can be parted with only in the manner that a title or easement right otherwise acquired may be parted with."

And in Martin v. Jordan, 117 Me. 574, 105 Atl. 104, this language is used:

"But William and John Martin's occupancy began many years ago. If they, either singly or successively, occupied this lot for 20 years in a manner consistent with all the elements of prescriptive title, at the expiration of 20 years such occupancy, whether under William or John, then title was acquired and became absolute. Of this title neither could be subsequently divested except by conveyance or loss by adverse usage."

We are therefore of the opinion that the trial court was in error in concluding that by the verbal agreement referred to the appellants were estopped to assert their title.

From what we have said it follows that the judgment should be reversed and the cause remanded, with directions to enter a decree quieting title of the appellants to all of the lands involved, except that portion to which they disclaimed during the trial, and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.