MARGARET KELLY v. FIRST MINNEAPOLIS TRUST COMPANY.[1]

August 2, 1929.

No. 27,506.

*Junell, Dorsey, Oakley & Driscoll* and *Kingman, Cross, Morley & Cant,* for appellant.

*R. J. Powell,* for respondent.

*Haydn S. Cole* and *Ira C. Oehler,* amici curiae, filed a brief in support of the contention of respondent.

[1]Reported in 226 N. W. 696.

WILSON, C. J.

Defendant appealed from a judgment. A statement of the facts is unnecessary. The record presents the inquiry whether a trust company can buy from itself securities which it owns for an estate which it holds in trust.

At common law this could not be done. St. Paul Tr. Co. v. Strong, 85 Minn. 1, 88 N. W. 256. When the Strong case was decided in December, 1901, our legislature had not changed the rule. It was therein stated that had the legislature intended to depart from the common law rule, resting on principles and morals, it would not let its intention rest upon implication but would have expressly provided that investments might be made by trust companies in securities "held and owned" by such companies. At the next session of the legislature, concededly because of the Strong case, a consideration of this matter resulted in the enactment of L. 1903, p. 90, c. 70, changing the phraseology of two sections of the then existing law in 16 places. These changes were embraced in a restatement of the two sections. One of the changes authorized trust companies to invest trust funds in approved securities "either then held by it or then specially procured by it." What did the legislature mean by the words "then held by it"?

A preceding section of the statute used the word "hold," indicating that the word did not mean ownership. G. S. 1923 (2 Mason, 1927) § 7731. True, the word may be used to indicate ownership or it may be used to indicate actual possession. Most of the property held by a trust company is held by it in trust. The trust company possesses such property; it holds it, but it does not own it. The word "hold" has a very natural and usual reference to such property. But is the use of such word limited to such securities?

We are now urged to hold that the legislature intended to use the word "held" in an unrestricted sense as meaning "owned." There is some logic to support that contention, yet there are obstacles.

If the legislature had so intended why did it not say so in undoubtful language? It had before it the language of this court in the Strong case as above quoted. Had it desired to do as claimed,

it could easily have expressly authorized investments in securities "held or owned" by them. It did not do that. It used only the word "held." Possibly it sought brevity. Assuming that in the absence of such circumstances as herein mentioned this word might be construed to include ownership, there are serious obstacles to our here giving such construction to the use of the word.

First, the subject matter of the legislative consideration embraced a field wherein the use of the word alone indicated an intention not to do what the court had suggested in the Strong case as necessary to change the common law rule. When a statute which is intended to make an innovation upon the common law is susceptible of more than one construction it is not to be construed as altering the common law further than the language of the statute clearly and necessarily requires. This fundamental proposition arises out of the rule that statutes in derogation of the common law are to be strictly construed. In the situation before us and as the matter was before the legislature no greater claim can be made by the appellant than that the legislature may have intended to use the word "hold" as including ownership. Perhaps the legislature construed the Strong case as meaning that the trust companies could deal only in trust securities and used the word "held" in a restricted sense so as to make the statute consistent with the declared law in the Strong case.

Second, the statutory law regulating trust companies was enacted for the protection of their patrons. It is stringent. The relaxation contended would be a rather fundamental departure. We construe the intention of the legislature to depart from a thoroughly established doctrine of the common law, especially when supported by principles and morals, only when it has clearly expressed such intention. All doubtful language must be construed against the intention to make such change. The circumstances and background to legislation must be taken into consideration in arriving at the intent of the legislature, and these sometimes diminish the force of some of the primary rules of construction which are discussed in appellant's brief. To truly interpret statutes abrogating rules of the common law it is proper to consider the conditions with refer-

ence to the subject matter that existed when it was adopted, the occasion and necessity for the law, and the causes which induced its enactment. We seek to ascertain the mischief and defect for which the common law did not provide and which the legislature sought to avoid and also the remedy intended to be afforded and the reason therefor. In this connection we may consider what the legislator would have intended on a particular question if called to his attention. When the effect intended is not clear or is left in doubt these elements are important. 6 Dunnell, Minn. Dig. (2 ed.) § 8940. The rule requiring a strict construction of all statutes in derogation of the common law is emphasized when the measure tends to infringe upon previous public policy.

Trust companies are useful and necessary in modern business. If the legislature had intended to remove them from the operation of the common law rule here involved it would seemingly have done so subject to some restrictions and limitations instead of treating them as if free from all human frailties which brought the common law rule into existence and which remains applicable to individuals. Though corporations, trust companies are dominated by human nature. Where the proper construction of a statute is otherwise doubtful, arguments from possible injustice or prejudice to the public interests or common rights may be considered.

The importance of the question is great. All we can do is to construe the law according to our light. We adhere to our holding in Larson v. Security B. & T. Co. 178 Minn. 209, 224 N. W. 235, 226 N. W. 697. If the law needs change let them who made it change it.

Affirmed.