[No. 30829. Department Two. May 12, 1949.]

JERRY GESCHWENDER, *a Minor, by Nadine Hager, his Guardian ad Litem, Appellant,* v. W. J. WARNER, *et al., Respondents.*[1]

*Witherspoon, Witherspoon & Kelley,* for appellant.

*Harry M. Morey,* for respondents.

SCHWELLENBACH, J.—This is an appeal from a judgment dismissing an action for personal injuries, tried to the court.

At the time of the accident, the plaintiff was a minor, aged seventeen years. The action was prosecuted in his behalf by Nadine Hager, his guardian *ad litem.* The complaint alleged that the plaintiff was proceeding, on his bicycle, in a southerly direction down Monroe street, in the city of Spokane, and that when he entered the intersection with College avenue, he had the right of way; "that he proceeded part way through the intersection when the Chevrolet coupe (of defendants) attempted a left turn onto College avenue and struck the plaintiff."

It was alleged that the negligence of the defendants which proximately caused the collision was: the failure of the operator of the automobile to give the right of way to the bicycle at her right; failure to signal her intention to turn to the left; failure to yield the right of way to the bicycle at her right, simultaneously approaching a given point

[1] Reported in 206 P. (2d) 308.

within the intersection; failure to have the lights on the automobile lighted; and failure to operate in a careful and prudent manner and that she did operate at a speed greater than was reasonable and proper under the conditions then existing; all in violation of certain ordinances of the city of Spokane.

These allegations were all denied by the defendants, who alleged affirmatively that the plaintiff's injuries were caused by the negligence of the minor, which proximately contributed to his injuries.

The accident occurred at the intersection of Monroe street and College avenue in Spokane, on January 16, 1946, at about 4:30 o'clock p. m. Monroe street is a busy thorough-fare running north and south. It is fifty-one feet wide. College avenue, a street forty feet wide, intersects Monroe from the west, forming a "T" intersection. There are no traffic signals at this intersection.

Mr. and Mrs. Warner live at 2325 west Broadway. They had gone down to Ulrich's, on Main and Stevens, where Mr. Warner cashed his check. Mrs. Warner was driving the car, a 1931 Chevrolet coupe. Mrs. Warner testified that she drove north on Monroe (keeping toward the center lane) to the point where she would turn west on College. She stopped, waiting for traffic to pass south. When there was nothing in sight between College and Broadway (the next street north), she turned left and went as far as the gutter line, where she stopped for pedestrians to pass. Just as she was about to start, she felt a "thump."

Mr. Warner testified:

"A. Mrs. Warner turned to Monroe, turned north to Monroe; she was going north and she wanted to make a turn to go west at College. She stopped at College. She waited for the traffic to clear, coming from the south. After the cars had gone by and other vehicles—no other vehicles coming from the south. Q. Coming from the—. A. From the north. . . . A. From the north, she started to turn west to College. She got about the pedestrian lane and had to stop to let pedestrians get by. Just about the time she started to go west on College, I saw another car, a car coming, one car and a bicycle come south on Monroe. They

were about one hundred and fifty feet or maybe better than that, but I guess one hundred and fifty feet from College, and the boy was going very fast. He was going faster than the car anyway. I didn't see a light on his bicycle. Mrs. Warner started to move slowly onto College. About that time she said, "It seems to me like there is a bump."

G. L. Gray testified that he was crossing College avenue from the north and had just stopped on the south curb on the south side of College when he heard an unusual noise. He whirled around and saw the car going west on College and the boy on the bicycle. As he watched, the boy fell off to the right side on his face. As he recalled it, the car was just crossing the crosswalk.

Leonard Ferguson testified that at the time of the accident he was across the street, getting into an automobile which was parked at the east curb of Monroe street, facing north, down a car length or two south of the College avenue intersection. The Warner car was headed west and going at "just a good fast walk." He saw the boy come down Monroe street, quite close to the west curb. The boy was going quite fast. When the boy hit, his whole body went "right in the air." He and Mr. Cusick, with whom he was riding, went over to where the boy was lying in the street. He testified that there was another car going south, very slowly, with the bicycle handlebars under the runing board, dragging the bicycle down. The boy was carried into a beauty parlor, and the police called.

Perry R. Miles, police officer, testified that he arrived at the scene two or three minutes after receiving the call. The boy had been removed to the beauty parlor. He located a splotch of blood on the west portion of Monroe street, about eighteen feet south of the north curb of College avenue, and twelve feet east of the west curb of Monroe. On the bead of the front bumper of the car, he found red paint similar in color to that of the bicycle. On the upper hinge of the right windshield post, he found what appeared to be flesh and a small amount of hair.

The boy was very seriously injured and was unconscious for four or five days. The abrasions were practically all

on the left side. There was a fracture in the skull about the size of a quarter, and it was necessary to operate in order to remove several particles of broken bone in his forehead. He was in the hospital until February 5th, and then was home in bed for six weeks. Later, in August, it was necessary to perform an operation on the brain. On November 13, 1946, without the knowledge of his guardian, he enlisted in the army. He was not present to testify at the trial, and his deposition by interrogatories was taken May 17, 1947, at Camp Drake, seventeen miles out of Tokyo.

He testified that at the time of the accident he was employed by the Western Union as a messenger boy. He had gone to the courthouse (one block west of Monroe, facing Broadway) to deliver a message. He left the courthouse on Mallon, one block north of Broadway, and stopped at a cafe on the corner of Mallon and Monroe. He testified that the brakes on his bicycle were in good condition. On the whole, his testimony was of very little benefit to the trial court. He testified:

"Q. On the night you were hit, was it slippery? A. I don't remember. Q. Do you recall the weather conditions? A. No. Q. Do you know whether it was dark or not? A. It was just turning dusk, some car lights were on and some were not. Q. Was your bike equipped with lights? A. Yes. Q. Two reflectors? A. Yes. Q. With reference to the light on the handle bars, what kind was that? A. It was a regular light made to fit the handlebars. Q. What kind of light on the fenders? A. It was made on the fender and held by two screws. Q. What kind of batteries, flashlight batteries for both of them? A. Yes. Q. Were the lights of the bicycle on at the time you were struck? A. Yes. Q. Do you recall seeing the car which struck you before it hit you? A. No. Q. How fast did you travel between College and Mallon on Monroe as you went down hill? A. I don't know. Q. What distance were you from the curb? A. I don't remember. Q. On the west side of the street? A. I was on the west side of Monroe Street. Q. Just prior to the collision, did you hear any horns sounded? A. No. Q. Was there any warning given you of a car about to turn in front of you? A. Not that I can recall. Q. Did you see the car that struck you before it hit you? A. No. Q. Were there any cars ahead of you travelling in the same direction? A. I don't remember.

. . . Q. Do you have any memory or recollection of the collision or what followed thereafter? A. No."

In answer to cross-interrogatories he testified:

"Q. If you entered on Mallon, did you have to stop at Broadway for the signal lights to change? A. I don't recall the signal light, whether it was green or red. . . . Q. Please tell us whether there was any automobile in front of you, going south on Monroe Street, at the time that you passed Broadway, or at any time between Broadway and College? A. I don't remember."

Dr. Raymond N. Schulte, who attended the boy, testified that, in his opinion, in an accident resulting in the injuries which this boy sustained, there could be an amnesia of from anywhere to two or three minutes to half an hour just prior to the accident.

The trial court found that there was no negligence on the part of the Warners, and that the boy was contributorily negligent.

We do not feel called upon to review the finding of contributory negligence, because we are convinced that there was ample testimony to sustain the finding that the respondent wife was not negligent.

Appellant calls our attention to the testimony of the husband that he saw a bicycle and a car coming down Monroe street. If this occurred before she started to turn west on Monroe, or as she was turning west, the wife should have seen them, and it would have become her duty, as the disfavored driver, to yield the right of way to the car and bicycle simultaneously approaching the intersection. Rem. Rev. Stat., Vol. 7A, § 6360-89 [P.P.C. § 295-29].

But as we read his testimony, she waited at College for the traffic coming from the north to clear, and then turned west on College. She stopped at the pedestrian lane to let pedestrians get by, and just as she was starting to go ahead on College, he saw the car and bicycle coming down Monroe.

Counsel for appellant quotes the following from Mr. Warner's cross-examination.

"Q. And before she ever started up, you at least, had seen this boy coming from the north on a bicycle? . . . A. Yes."

We think that the testimony can be better understood if given in connection with the questions and answers given just previously.

"Q. She stopped on the inside lane where she stood and I presume went around the center in the proper lane and went west on College, is that right? A. She stopped there until all traffic had passed coming south. Q. Yes? A. And then there being no other vehicles coming from the south, she proceeded to turn to College Avenue, west. Q. And then the stop that she described it to be, at the gutter there? A. Well, just about, I should think. Q. And the purpose of that was to let the pedestrian, Mr. Gray, go across the street? A. Yes. Q. And then she started up and went down College Street? A. Yes. Q. And before she ever started up, you, at least, had seen this boy coming from the north on a bicycle? . . . A. Yes."

We have no difficulty, after reading Mr. Warner's testimony, both on direct and cross-examination, in concluding that he saw the automobile and bicycle coming down Monroe, just as Mrs. Warner was starting up after stopping at the pedestrian lane.

In view of our disposition of the case, we do not deem it necessary to discuss the other assignments of error.

We find no negligence on the part of respondents, and the judgment of dismissal is affirmed.

JEFFERS, C. J., ROBINSON, SIMPSON, and GRADY, JJ., concur.