449 P.2d 656

The STATE of New Mexico, Plaintiff-Appellee,

v.

George H. THOMSON and Ada Thomson, Defendants-Appellants.

No. 8564.

Supreme Court of New Mexico.

Jan. 20, 1969.

---

Bigbee & Byrd, Richard N. Carpenter, H. J. Guthmann, Santa Fe, for appellants.

Boston E. Witt, Atty. Gen., James V. Noble, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

CARMODY, Justice.

The defendants appeal from the trial court's decree quieting title in the State.

Although the case was initially instituted by the Capitol Building Improvement Commission, the State itself has been substituted as the proper party, appellee.

The trial was upon stipulated facts, and, inasmuch as the appellants (whom we will hereafter refer to as "Thomson") make divergent attacks upon the findings made by the court, we will summarize the stipulated facts insofar as they are necessary for decision, rather than refer to the findings themselves.

The New Mexico Penitentiary was established and its Board of Managers created in 1884. In 1893, the Board, by statute, was given the power of eminent domain (ch. 68, § 1, Sess.L.1893). In about 1900, the Board having acquired certain lands to the south of the penitentiary itself, both east and west of the tract involved in this litigation, entered upon and took possession of this particular property and commenced livestock pursuits thereon. The tract was within the area covered by patent from the United States to the City of Santa Fe, dated February 16, 1901. At that time, the owner of the property was unascertained or unlocatable, and no effort was made to purchase the land. The Board continued its physical possession of the tract until 1956 or 1957, having constructed improvements from time to time, consisting of a dairy barn, cattle and pig sheds and corrals, dog houses and runs, a slaughter house, a lumber shed, tool sheds, and fences. The penitentiary has now been moved to another site, and, since 1959, the property in question has been vacant. The records of Santa Fe County do not disclose a conveyance or lease of the property to the Board of Penitentiary Commissioners and there has never been any written license or permission to use the tract. The record title to the tract, in 1900, stood in the name of Rena H. Spiegelberg, or R. H. Spiegelberg, who at that time was a resident either of Santa Fe or New York City. There is no record of the assessment of ad valorem taxes prior to the year 1931, but, insofar as the taxes for 1931 through 1933, the records do show that they were paid by issuance of a tax deed, by which the tract was sold to the State for unpaid taxes. This deed was issued in 1937. In 1952, Spiegelberg conveyed the property by quitclaim deed to the defendant Thomson, and thereafter Thomson made application to repurchase the tract from the Tax Commission and received a deed therefor upon the showing that they had paid $52.52 taxes for the years 1943–1952. There were never any condemnation proceedings filed, nor was there ever any attempt by Spiegelberg to eject the State from the property, nor any effort to obtain compensation for its use. Thomson has never been in possession of the property.

The trial court concluded that the Board of Penitentiary Commissioners had the right to acquire fee simple title in 1900 by condemnation proceedings and that there occurred a de facto condemnation which extinguished the Spiegelberg title; that the Spiegelberg quitclaim deed conveyed no title; and that the tax sale in 1952 and the deed to Thomson had no effect on the State's title to the property. Alternatively, the court concluded that, after the issuance of the tax deed to the State in 1937, the State had absolute fee simple title, which was transferred to the penitentiary by act of the legislature in 1939. The trial court also made other conclusions that certain tax statutes allowing the right to repurchase were unconstitutional, insofar as this proceeding was concerned; however, we need not consider this phase of the case as our decision is upon another basis.

We fully appreciate the trial judge's dilemma which resulted in giving alternative bases for his decision. It must have occurred to him, as it is so apparent to us, that there were other obvious reasons why the State's title could be quieted which were neither pleaded nor argued. In such a situation, it is somewhat difficult to resist the temptation to decide the case on an apparent and obvious theory rather

than on the basis argued. However, rather than go outside the briefs and the pleadings themselves, we will determine the matter on the arguments here present, even though to do so is both circuitous and lengthy.

The judgment of the trial court must be affirmed upon the alternative conclusions made by the court. The fee simple title received by the State under the 1937 tax deed was transferred to the penitentiary by virtue of the provisions of ch. 55, Sess.L.1939, and the claimed right to repurchase by the former owner never came into existence. Ch. 27, L.1934 (Special Session), granted a right of redemption by which the former owner could reobtain property sold for non-payment of taxes provided the privilege was exercised within a two-year period. It is obvious that any right of redemption was not exercised. The issue relates to what benefits, if any, were granted to Spiegelberg by reason of the passage of ch. 203, Sess.L.1939, which gave to former owners a right to repurchase as distinguished from redemption. This right of repurchase was without time limitation. Thus, if there were no other statute affecting the title to the property with which we are here concerned, it would seem that Thomson's repurchase in 1952 was valid. However, at the same session of the legislature as the repurchase statute was adopted, there was also enacted ch. 55, Sess.L.1939, which concerned the penitentiary, its powers and authority. Both of these acts took effect ninety days following the adjournment of the legislature, although ch. 55 was approved at an earlier date, thereby explaining the circumstance of its having a lower chapter number.

Sections 2 and 4 of ch. 55, Sess.L.1939, which now appear as §§ 42–1–2 and 42–1–4, N.M.S.A.1953, read as follows:

"42–1–2. Present penitentiary identified as one referred to in Constitution as a beneficiary—Rights and titles.— The penitentiary of New Mexico as herein established as a body politic and corporate, is hereby declared to be the same institution enumerated in section 1 of article XIV of the Constitution of New Mexico, and the same institution which is one of the beneficiaries of the lands donated by the United States government to the state of New Mexico in trust for said institution, and as such body politic and corporate is hereby vested with the absolute legal right and title to all real estate, personal property, and other assets and things of value heretofore held, used and operated by the board of commissioners of the penitentiary of New Mexico before incorporation, and all appropriations heretofore made, including the right to receive the benefits and proceeds of permanent and current funds pursuant to the Enabling Act."

"42–1–4. Transfer of title to new corporation.—The governor of the state of New Mexico is hereby authorized and empowered upon the application of the penitentiary of New Mexico, as a body corporate, to execute in the name of the state of New Mexico any necessary deed or deeds, or other conveyances or assurances of title to vest in the penitentiary of New Mexico, as a corporation, complete legal title to any and all real, personal or mixed property heretofore held, used and possessed by the state of New Mexico for the board of penitentiary commissioners, and by the board of penitentiary commissioners and their predecessors in office, and the secretary of state is authorized and directed to attest the signature of the governor to any such document and to affix the great seal of the state of New Mexico thereto."

■ Although any conflict between ch. 55 and ch. 203 is not at first apparent, in reality there is a conflict as to the applicability of the two statutes. Relative to the property with which we are here concerned, the penitentiary ownership and the right to repurchase are irreconcilable. We need not determine which of the

two acts took effect first, but because the penitentiary statute is a special act whereas the tax statute is general, the rule is that the special statute prevails in any area of conflict. Lopez v. Barreras, 77 N.M. 52, 419 P.2d 251 (1966), Martinez v. Cox, 75 N.M. 417, 405 P.2d 659 (1965) ; State ex rel. Public Employees Retirement Board v. Mechem, 58 N.M. 495, 273 P.2d 361 (1954) ; and Varney v. City of Albuquerque, 40 N.M. 90, 55 P.2d 40, 106 A.L.R. 222 (1936). The special statute (ch. 55) was applicable to penitentiary property; and if the property with which we are here concerned was, by the provisions of that act, transferred to the penitentiary, then the right of repurchase created by ch. 203 either never came into existence or was lost long prior to the quitclaim deed from Spiegelberg to Thomson.

■ We also note that the sale for delinquent taxes in 1937 was controlled by the law in effect at that time, De Baca v. Perea, 52 N.M. 418, 200 P.2d 715 (1948) ; see, also, Kreigh v. State Bank of Alamogordo, 37 N.M. 360, 23 P.2d 1085 (1933), and Williams v. Van Pelt, 35 N.M. 286, 295 P. 418 (1930). Thus the right or privilege to which Spiegelberg was entitled at the time of the tax sale allowed redemption within two years, not a right of repurchase at any time. Turner v. Sanchez, 50 N.M. 15, 168 P.2d 96, 164 A.L.R. 1280 (1946), relied upon by Thomson, was a case involving redemption, and is not applicable here where the right of redemption has been lost and there is merely a claimed right to repurchase. We would observe that this so-called right to repurchase is not a vested property right. Yates v. Hawkins, 46 N.M. 249, 126 P.2d 476 (1942) ; and Hood v. Bond, 42 N.M. 295, 77 P.2d 180 (1938). See, also, Belmore v. State Tax Commission, 56 N.M. 436, 245 P.2d 149 (1952).

Turning now to the statute, the words "held, used and operated," used in § 42–1–2, supra, must have implied the legislative intention to mean something differ-

ent than being restricted to "ownership." The very fact that the statute used the terminology "is hereby vested" in connection with the words "held, used and operated" must have intended to include property which the institution "had physical possession of" as such a meaning follows when all of the words of the statute are considered together. See, Chicago Home for Girls v. Carr, 300 Ill. 478, 133 N.E. 344 (1921) ; as well as Kelly v. First Minneapolis Trust Co., 178 Minn. 215, 226 N.W. 696 (1929) ; Oklahoma City v. Board of Education of Oklahoma City, 181 Okl. 539, 75 P.2d 201 (1938) ; and Witsell v. City of Charleston, 7 S.C. 88, at 99 (1875), for cases attempting to define "held."

■ As stated in Chicago Home for Girls v. Carr, supra, the word "held" has no primary or technical meaning and its meaning is determined largely by the connection in which it is used. So viewed, it must follow that the statute vested in the penitentiary all the property that it was then holding, using and operating, and this naturally included the property upon which barns and other improvements had been constructed.

■■ However, Thomson, without admitting that § 2, ch. 55, amounted to a vesting of title, relies on § 4 in urging that, unless there was a deed from the governor, there could be no title in the penitentiary. The main thrust of this argument is what is claimed to be an executive construction that the particular property was not really a part of the penitentiary property or at least that title was not transferred as long as the governor did not execute a deed. As to executive construction, there is no place for its application because title "vested" by act of the legislature, and the governor had no discretion except to formalize the record of title. There are no facts present to make the situation analogous to State ex rel. Dickson v. Aldridge, 66 N.M. 390, 348 P.2d 1002 (1960), or State ex rel. State Highway Commission v. Walker, 61 N.M. 374, 301 P.2d 317 (1956) ; both of which concerned the doing of positive acts rather

than mere failure to perform. 'The balance of this argument is disposed of by what we have said and the general rule of construction that statutes should be construed·so as to give effect to all their provisions. Martinez v. Research Park, Inc., 75 N.M. 672, 410 P.2d 200 (1965). Thomson would have us read § 2 without the words "is hereby vested," and this we cannot do.

■ Thomson's contention, there was a violation of art. IV, § 16, Const. of New Mexico, because the title of ch. 55 did not clearly express the subject of the bill, is not well taken. The title to ch. 55 is broad enough to meet the test enunciated by us in our cases, State v. Aragon, 55 N.M. 423, 234 P.2d 358 (1951); and State v. Ingalls, 18 N.M. 211, 135 P. 1177 (1913), and gave ample notice to those interested that it was concerned with "titles and rights" to penitentiary property. It could not have contributed to logrolling or fraud, and it was not necessary for the title of the act to set forth the source of the titles to the property which it directed be transferred to the penitentiary. Cf. State ex rel. State Park and Recreation Commission v. New Mexico State Authority, 76 N.M. 1, 411 P.2d 984 (1966); and Gallegos v. Wallace, 74 N.M. 760, 398 P.2d 982 (1964).

Certain other contentions raised by the appellant are disposed of by what we have said, or the disposition thereof is unnecessary. We are not impressed with the claim of lack of equity; it is apparent that Thomson hoped to obtain property worth a large sum of money for a very small investment; neither our sympathies nor our sense of equity is aroused.

■ There is no validity to the argument that the State has taken property without due process of law. The original owner (Spiegelberg) failed to timely redeem, and the right to repurchase did not come into existence. Thus Thomson acquired no valid interest upon which any redemption could operate to justify the issuance of a proper deed from the Tax Commission. There being no right to redeem (De Baca v. Perea, supra), the contention of deprivation of property without due process of law falls of its own weight. The quitclaim deed from Spiegelberg conveyed nothing more than her then interest, Metzger v. Ellis, 65 N.M. 347, 337 P.2d 609 (1959), and, of course, the Tax Commission could not issue a valid deed because the property had years before been transferred to the penitentiary by act of the legislature. When the requirements of notice and hearing have been met, there is no denial of due process where the title to property is taken by the State for failure of the taxpayer to pay taxes, Maxwell v. Page, 23 N.M. 356, 168 P. 492, 5 A.L.R. 155 (1917), and Yates v. Hawkins, supra; and this is particularly true when there has been a failure to redeem within the period of grace allowed therefor, De Baca v. Perea, supra.

■ Finally, any argument that the State took less than the fee simple title to the property is to no avail. The statute in effect at the time (ch. 27, § 9, L.1934 (Special Session)), not only provided that the title vested by tax sale be a "complete title to the property" but also that the State "shall be deemed a purchaser." Hargrove v. Lucas, 56 N.M. 323, 243 P.2d 623 (1952). Once title vested, as it did under the circumstances here present, the subsequent non-use of the premises could not alter the rights of the parties or divest the title so acquired. Cf. Hoskins v. Talley, 29 N.M. 173, 220 P. 1007 (1923); Mugaas v. Smith, 33 Wash. 2d 439, 206 P.2d 332, 9 A.L.R.2d 846 (1949). Having taken fee simple title, the fact that the property is no longer used for the purposes to which it was put for almost sixty years makes no difference, and the provisions of § 42–1–5, N.M.S.A.1953, become operative and authorize the disposition of the same as unneeded property.

In view of what we have said, therefore, the appeal is without merit and the judgment is affirmed. It is so ordered.

NOBLE, C. J., and MOISE, J., concur.