QUESTION: Is interest earned on the client trust funds of retarded clients the property of those clients?
SUMMARY: In accordance with the provisions of s. 393.13(4)(d)2., F. S., interest earned on trust funds of an individual retarded client of an institution under the jurisdiction of the Department of Health and Rehabilitative Services is the property of the individual client to be used or conserved for the personal use or benefit of the individual client as provided in s. 402.17(2), F. S., and the department is not authorized to use or devote such funds or the interest accruing thereon to the use and benefit or general welfare of the department or any of the institutions under its jurisdiction or the patients or inmates or employees thereof. Your question is answered in the affirmative. The Bill of Rights of Retarded Persons, ss. 393.13-393.14, F. S., provides for the comprehensive care, treatment, and habilitation of mentally retarded individuals by the Department of Health and Rehabilitative Services (hereinafter department) pursuant to the express findings and intent of the Legislature. Section 393.13(2). Among those rights of clients specifically enumerated within s.393.13(4), F. S., it is provided that: 1. All money belonging to a client held by the [department] shall be held in compliance with subsections 402.17(2) and (7). 2. All interest on money received and held for the personal use and benefit of a client shall be the property of that client and shall not accrue to the general welfare of all clients or be used to defray the cost of residential care. Interest so accrued shall be used or conserved for the personal use or benefit of the individual client as provided in subsection 402.17(2). [Section 393.13(4)(d)1. and 2., F. S.] Cf. s. 402.18, F. S., relative to the use of moneys derived from various sources on deposit in the welfare trust funds referred to in s. 402.17(7). The express legislative intent embodied within the Bill of Rights of Retarded Persons specifically provides: (d) It is the intent of the Legislature: 1. To articulate the existing legal and human rights of the retarded so that they may be exercised and protected. The mentally retarded person shall have all the rights enjoyed by citizens of the state and the United States. * * * * * (e) It is the clear, unequivocal intent of this act to guarantee individual dignity, liberty, pursuit of happiness, and protection of the civil and legal rights of mentally retarded persons. [Section 393.13(2)(d)1. and (e), F. S.] Additionally, s. 393.13(6), F. S., provides: (6) NOTICE OF RIGHTS. — Each client, if competent, or parent or legal guardian of each client if the client is incompetent, shall promptly receive from the Department of Health and Rehabilitative Services a written copy of this act. Each client able to comprehend shall be promptly informed in clear language of the above legal rights of mentally retarded persons. The primary guide to statutory interpretation is to determine the purpose of the Legislature, to ascertain the legislative will, and to carry that intent into effect to the fullest degree. State v. Atlantic C. L. R. Co.,47 So. 969 (Fla. 1908); Van Pelt v. Hilliard, 78 So. 693 (Fla. 1918); Tyson v. Lanier, 156 So.2d 833 (Fla. 1963); Dickinson v. Bradley,298 So.2d 352 (Fla. 1974). To this principle, all rules of statutory construction are subordinate. American Bakeries Co. v. Haines City, 180 So. 524 (Fla. 1938). Where the language of a statute is plain and unambiguous, the plain and obvious provisions must control. Ryder Truck Rental, Inc. v. Bryant, 170 So.2d 822
(Fla. 1964); Southeastern Utilities Service Co. v. Redding,131 So.2d 1 (Fla. 1961). This intent must be given effect even if it appears to be contrary to the strict wording of the statute. Fort Lauderdale v. Des Camps, 111 So.2d 693 (2 D.C.A. Fla., 1959). In general, the manifest intent of the Legislature will prevail over the literal import of the words used by it. Barrington v. State,199 So. 320 (Fla. 1940); Worden v. Hunt, 147 So.2d 548 (2 D.C.A. Fla., 1962). This rule particularly applies when a construction based on the strict letter of the enactment would lead to a result that defeats the evident legislative intent. Payne v. Payne,89 So. 538 (Fla. 1921); Bauer v. Reese, 161 So.2d 678 (1 D.C.A. Fla., 1964). Section 402.17(2), F. S., provides, with respect to the authority of the department to hold such patients' moneys in trust, that the department is empowered to: (a) Accept and administer as a trust any money or other property received for personal use or benefit of any patient or inmate; (b) Deposit money so received in banks qualified as state depositories; (c) Withdraw any such money and use the same to meet the current needs of the patient or inmate as they may exist from time to time; (d) As such trustee to establish savings accounts, demand deposits, or time deposits, or invest in the manner authorized by law for fiduciaries such moneys not required to be used for current needs of the patient or inmate; (e) To commingle such moneys for the purpose of deposit or investment. Alternatively, s. 402.17(7), F. S., provides that: (a) Subject to the approval of the Department of Health and Rehabilitative Services, the Divisions of Youth Services, Retardation, or Mental Health may deposit any funds of children, patients, or residents in their possession in any bank in the state or may invest or reinvest such funds in bonds or obligations of the United States for the payment of which the full faith and credit of the United States is pledged. For purposes of deposit only, the funds of any child, patient, or resident may be mingled with the funds of any other children, patients, or residents. (b) The interest or increment accruing on such funds shall be deposited in the appropriate welfare trust fund of the Divisions of Youth Services, Retardation, or Mental Health. (Emphasis supplied.) Cf. s. 402.18, F. S., providing for the use of such trust funds. It might be noted that s. 402.17(7) has to do only with the deposit of client or patient funds in banks or the investment or reinvestment thereof in the specified general obligations of the United States and the deposit of interest accruing on patients' funds in the appropriate welfare trust fund; and that s. 393.13(4)(d)1., F. S., makes no reference to s.402.18, which appropriates the moneys in the several welfare trust funds, which are derived from a variety of sources other than the individual clients or patients, and regulates the use of all such moneys for the general benefit and welfare of the patients, inmates, and employees of the several affected institutions and authorizes the investment of such proceeds on deposit in such welfare trust funds and the deposit of any interest earned on such investments in the several welfare trust funds. Thus, s.393.13(4)(d)1. simply requires the department to hold and administer the individual client's funds in the manner and by and through the means or vehicles provided for in s. 402.17(2) and (7), F. S., but it does not authorize the department to use such funds for the benefit and welfare of any agency or person other than the individual client for whom it holds such personal funds. Section 393.13(4)(d)1. and 2., F. S., authorizes and requires the department to hold (not use or devote to the benefit and welfare of other patients, inmates, or employees of the institution) all moneys belonging to clients in accordance with the aforementioned provisions of s. 402.17(2) and (7), F. S. The term "held" has no primary or legal technical meaning, being determined largely by the connection in which it is used. Chicago Home for Girls v. Carr, 133 N.E. 344, 346, 300 Ill. 478; State v. Thomson,449 P.2d 656, 659, 79 N.M. 748. As applied to property, the word "held" embraces two ideas: That of actual possession of some subject of dominion or property and that of being invested with legal title or the right to hold or claim such possession. In re Coe's Estate,202 P.2d 1022, 1024, 33 Cal.2d 502; Witsell v. City of Charleston,7 S.C. 88, 99. The term "held," when used to authorize a trust company to invest trust funds, should be construed in the sense of, and relates to, property other than that of the trust company itself in its possession and under its control for (the use and benefit of) others (for whom it holds such funds or property). In re Security Bank Trust Co., 224 N.W. 235, 236, 178 Minn. 209. See also: 19 Words and Phrases Held, p. 584, et seq. I am of the opinion, based on the foregoing statutory citations and authorities, that the legislative intent in employing or using the word "held" within the provisions of s. 393.13(4)(d)1. and 2., F. S., requiring the department to hold the client's trust funds in compliance with subsections 402.17(2) and (7), and to use or conserve the interest accruing thereon for the personal use and benefit of the individual client as provided in s. 402.17(2), F. S., is to empower and require the department to administer, invest, deposit, or apply and use such funds, on behalf of the individual client as a trust and in the capacity of a fiduciary or trustee, in the manner and by and through the means and vehicles provided for in s. 402.17(2) and (7), F. S., and there was no intent to empower the department to use or devote such funds to the benefit or general welfare of the affected institutions or the patients or inmates and employees of such institutions. In providing within s. 393.13(4)(d)2., F. S., that: [a]ll interest on money received and held for the personal use and benefit of a client shall be the property of that client and shall not accrue to the general welfare of all clients or be used to defray the cost of residential care. Interest so accrued shall be used or conserved for the personal use or benefit of the individual client as provided in subsection 402.17(2)[,] it was clearly the specific intention of the Legislature that any and all interest earned on the client trust funds of individual retarded clients shall accrue to and become the property of the client for the personal use and benefit of the retarded client, when needed, or be conserved, reinvested, redeposited, or reapplied by the department in the manner set out in s. 402.17(2), F. S., on behalf of, and for the personal use and benefit of, the individual retarded client, notwithstanding any provision that may be deemed to be to the contrary with respect to the several proceeds and moneys in the several welfare trust funds and the use thereof as provided in s. 402.17(7), F. S. Cf. s. 402.18(2), F. S., providing that there shall be deposited in the Welfare Trust Fund (referred to in s. 402.17[7]) "any moneys which may be assigned to the division Welfare Trust Fund by patients . . . for deposit in said fund," and that all moneys in such fund be held for the general benefit and welfare of the patients and employees of the institution. Moreover, s. 402.17(7), F. S., was promulgated and implemented as part of the Governmental Reorganization Act of 1969, Ch. 69-106, Laws of Florida, and provided a general procedure for the deposit and investment or reinvestment of personal client funds and the trust funds into which the interest accruing on such funds was to be deposited by the then existing Divisions of Youth Services, Retardation, and Mental Health within the department. Subsection (7) does not provide for or regulate the disposition or use of such deposits or the earnings on such investments. Thereafter, the Bill of Rights of Retarded Persons was promulgated and adopted pursuant to Ch. 75-259, Laws of Florida. It is well settled that, to the extent of any inconsistent or conflicting provisions in earlier statutes, the last expression of the legislative will is the law and that, therefore, the last in point of time or order of arrangement prevails, especially where the inconsistent or conflicting provisions appear in different statutes. Johnson v. State,27 So.2d 276 (Fla. 1946), cert. den. 329 U.S. 799; Sharer v. Hotel Corp. of America, 144 So.2d 813 (Fla. 1962). The Legislature, in adopting and implementing the Bill of Rights of Retarded Persons, provided specific findings and an express articulation of its intent with respect to the rights and privileges of retarded clients within the purview of the act. The clear, unequivocal legislative intent embodied within the Bill of Rights for Retarded Persons is that the department administer as a trust and use, deposit, invest, apply, or hold the moneys of the individual retarded client in the manner and through or by the means of the vehicles provided in s. 402.17(2) and (7), F. S., but all interest received or earned on the trust funds of any such individual retarded client becomes, and is, the property of the individual client to be used or conserved for the personal use or benefit of the individual client as provided in s. 402.17(2), and not otherwise.