---

(No. 14151.—Reversed and remanded.)
THE CHICAGO HOME FOR GIRLS, Appellant, *vs.* PATRICK J. CARR, County Treasurer, Appellee.

*Opinion filed December 22, 1921.*

1. CONSTRUCTION—*when tax exemption provision in a special charter must be construed with constitution of 1848.* A provision for exemption from taxation in a special charter granted in 1865 to a charitable home for girls must be construed in connection with the provisions of the constitution of 1848.

2. SAME—*a contract must be construed as a whole.* A contract must be construed as a whole and the intention of the parties is to be collected from the entire instrument and not from detached portions, and words used in one sense in one part of the contract are, as a general rule, deemed to have been used in the same sense in another part of the instrument, where there is nothing in the context to indicate otherwise.

3. STATUTES—*laws exempting property from taxation are to be strictly construed—application of rule.* All laws exempting property from taxation are to be strictly construed and the intention to exempt property from taxation must appear affirmatively and can not be presumed, but the rule as to strict construction does not relieve the courts of the duty of interpreting the exemption by the ordinary rules of construction and carrying out the intention of the legislature if it can be ascertained.

4. SAME—*a law which is unambiguous cannot be construed.* A law which is plain and unambiguous, whether it be expressed in general or limited terms, is not open for construction, as the legis-

lature should be considered to have intended to mean what it has plainly expressed, and when the words used have a definite and precise meaning it is not allowable to go beyond the statute in order to restrict or extend their meaning.

5. WORDS AND PHRASES—*meaning of words "having" or "hold," when applied to property.* The word "having" or "hold," when applied to property, imports ownership and time of ownership.

6. SAME—*meaning of the word "held" and of term "held by."* The term "held by" may be used in a statute or contract as equivalent to ownership, but the word "held" has .no primary or legal technical meaning, its meaning being determined largely by the connection in which it is used.

7. CORPORATIONS—*when tax exemption provision may include property leased for revenue.* A provision in a special charter exempting property of the corporation from taxation and authorizing it to hold real estate "for the use of or for the purposes of said corporation" may include both property acquired for the use of the corporation and which it uses, and property acquired for its purposes and which it holds and leases to produce revenue to be used in carrying out its purposes.

8. TAXES—*what property of the Chicago Home for Girls is exempt under special charter.* The provision of section 9 of the special charter of the Chicago Home for Girls, granted in 1865, exempting property of the institution from taxation, includes all real property owned and held by or for the use of the corporation, whether or not it is actually occupied by said corporation, as the provision of the charter authorizing the institution to hold real property provides for investment and does not limit the corporation to the ownership of property occupied by the institution.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

ELMER E. JACKSON, for appellant.

ROBERT E. CROWE, State's Attorney, WILLIAM H. DUVAL, and W. W. DEARMOND, (HAYDEN N. BELL, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an amended bill for injunction filed by the appellant, the Chicago Home for Girls, against the county treasurer of Cook county, to enjoin the collection of taxes

assessed against certain real estate of the appellant for the years 1915 to 1920, inclusive. A demurrer was filed to the amended bill and after a hearing before the chancellor the demurrer was sustained. A decree was thereupon entered dismissing the bill for want of equity at appellant's costs. From that decree this appeal was taken to this court.

The amended bill sets out the charter under which appellant, under the name of "The Chicago Erring Woman's Refuge for Reform," was established, the charter being granted by the Illinois legislature in 1865. The bill alleges that appellant was incorporated under said special act authorizing its incorporation and that its name was changed to "The Chicago Home for Girls," and that, acting under said charter, buildings and equipment for carrying on this charitable work and receiving donations from time to time were provided, and that during all of its existence appellant has conducted a home for the care and reformation of erring females in accordance with its charter provisions, most of them being young girls of school age. The bill further alleges that the real estate here in question was obtained by said corporation about October 6, 1865, and has been owned and used by appellant continuously since that time as income-producing property and has been rented to tenants, and that the revenue derived therefrom has been used solely for the charitable purposes of appellant; that the funds used in the purchase of said real estate were donated to appellant in order to provide income-bearing property, of which the income was to be used in carrying out appellant's charitable work; that no part of the income from said real estate or from any other investments of appellant has ever been diverted to any other purpose or for the use of any private person or corporation, but that all of the income has been used solely for the support and maintenance of appellant's charitable work; that all the income which has been derived and is now being derived from appellant's real estate and other investments is necessary for

the proper maintenance of appellant's charitable work. The bill further alleges that appellant had been led into a feeling of security in its charter right as to exemption from taxation of said real estate because the property from 1865 to 1915 has never been taxed by the taxing bodies of the State or county until 1920, when the property was assessed for taxes for the years 1915 to 1920, inclusive. The charter of appellant is annexed to and made a part of the bill of complaint.

Section 9 of appellant's charter reads: "The said corporation may receive, take and hold, either by gift, purchase, devise, bequest or otherwise, any real estate or personal property for the use of or for the purposes of said corporation, whether the same be purchased, given, devised, bequeathed or conveyed directly to said corporation or to any of its officers for the use of said corporation; and any and all real estate or personal property held by or for the use of or occupied by said corporation shall be exempt from taxation for any purpose, and no real estate of said corporation or to which said corporation shall acquire title shall be alienated or leased for a longer time than two years at any one time, except by a majority vote of the members of said corporation," etc. (1 Private Laws of 1865, p. 100.)

It is claimed by counsel for appellant in his brief that under the provisions of said section 9 all the property of appellant owned by it or held by it or held in trust for its use is exempt from taxation, while counsel for appellee urge that the exemption provision in said section of its charter embraces only property "held by appellant or for its use" in the sense of being occupied by it, according to the language of the charter, and that the property here in question is leased and held by tenants for their use as homes; that it is not held for the use of or in trust for appellant nor occupied by it and therefore is not exempt, and that the superior court therefore rightly dismissed the bill for want of equity.

300—31

As this special charter was granted in 1865 its provisions must be construed in connection with the provisions of the constitution of 1848 rather than those of the present constitution. (*University* v. *People,* 99 U. S. 309; *Northwestern University* v. *Hanberg,* 237 Ill. 185, and cases there cited.) Section 3 of article 9 of the constitution of 1848 provides: "The property of the State and counties, both real and personal, and such other property as the General Assembly may deem necessary for school, religious and charitable purposes, may be exempt from taxation." (Hurd's Stat. 1917, p. 48.)

There can be no question under the reasoning of the Supreme Court of the United States in *University* v. *People, supra,* and of this court in *Northwestern University* v. *Hanberg, supra,* that the legislature, under the provision of the constitution of 1848 quoted, could exempt all the property of appellant, both real and personal, had it desired so to do and had it drawn the charter in such way as to plainly express that intention, so the only question here to be considered is whether or not the wording of section 9 of appellant's special charter, fairly construed, did exempt all of appellant's real estate from taxation. In reaching a proper construction as to the meaning of the contract created by this charter certain rules should be observed. This court has held that all laws exempting property from taxation are to be strictly construed; (*Montgomery* v. *Wyman,* 130 Ill. 17;) that it should not be presumed that the legislature intended to exempt property from taxation; that such an intention, to be considered binding, must appear affirmatively. (*People* v. *Theological Seminary,* 174 Ill. 177, and cases there cited.) We have also held that the rule as to strict construction in favor of the State does not relieve the courts of the duty of interpreting the exemption by the ordinary rules of construction and carrying out the intention of the legislature if it can be ascertained; that if, after the application of all rules of interpretation

for the purpose of ascertaining such intention, "a well-founded doubt exists then an ambiguity occurs, which may be settled by the application of the simple rule which resolves the doubt against the grant. But the possibility of a doubt is not sufficient. It is out of such possibilities that controversies arise, and it is the duty of courts to ascertain by judicial interpretation, not whether a doubt may be asserted but whether any ambiguity really exists." (*Northwestern University* v. *Hanberg, supra,* on p. 189. See to the same effect, *Citizens' Bank* v. *Parker,* 192 U. S. 73.) Whether we are considering an agreement "between parties, a statute or a constitution with a view to its interpretation, the thing we are to seek is the thought which it expresses. To ascertain this, the first resort in all cases is to the natural signification of the words employed, in the order and grammatical arrangement in which the framers of the instrument have placed them." (*Newell* v. *People,* 7 N. Y. 9; 6 R. C. L. 842.) A contract must be construed as a whole, and the intention of the parties is to be collected from the entire instrument and not from detached portions, it being necessary to construe all its parts in order to determine the meaning of any particular part as well as of the whole. (13 Corpus Juris, 525; 6 R. C. L. 837.) Words used in one sense in one part of a contract are, as a general rule, deemed to have been used in the same sense in another part of the instrument, where there is nothing in the context to indicate otherwise. (13 Corpus Juris, 532, and cases there cited.) "It is said to be the most natural exposition of a statute to construe one part by another, for that expresses the meaning of the makers. This exposition is *ex verceribus actus.* The words and meaning of one part may lead to and furnish an explanation of the sense of another." (Sutherland on Stat. Const. sec. 239.) It has been stated that the word "having" or "hold," as to property, imports ownership and time of ownership. (*Butler's case,* 3 Coke, 25; 12 Am. & Eng. Ency. of Law,—2d ed.—

287, and cases cited; 4 Words and Phrases, 3272-3274, inclusive, and cases there cited; 2 id.—2d series,—822-824, and cases there cited.) This court has held that the term "held by" may be used in a statute or contract as equivalent to ownership. (*People* v. *Graceland Cemetery Co.* 86 Ill. 336; *Rosehill Cemetery Co.* v. *Kern,* 147 id. 483.) The word "held" has no primary or legal technical meaning. The meaning to be given to the word is determined largely by the connection in which it is used, as shown by reference to the authorities heretofore cited.

We will necessarily be assisted in trying to ascertain the intention of the legislature in the use of the word "held" in the exemption clause by reading in connection therewith the rest of said charter. This same section designates what property the corporation may acquire. It provides that the "corporation may receive, take and hold, either by gift, purchase, devise, bequest or otherwise, any real estate or personal property for the use of or for the purposes of said corporation, whether the same be purchased, given, devised, bequeathed or conveyed directly to said corporation or to any of its officers." This part of the section seems to show conclusively that the word "hold," as here used, was intended to be equivalent to the word "owned," because ownership is necessarily understood to be the thing intended from the whole context of these words, therefore it would seem naturally to follow that the words "held by," in the portion of the charter just quoted, concerning the exemption, were used in the same sense, because they refer to the same subject matter and no reason can be assigned for changing the meaning. Then, too, this quoted clause giving authority to hold or own property includes property "conveyed directly to said corporation or to any of its officers for the use of said corporation." This would seem to show strongly the meaning of the next succeeding sentence granting the exemption, for that sentence says that the property exempted from taxation shall be that "held

by or for the use of" said corporation. The words "for the use of" manifestly refer to the property which the corporation was authorized to acquire by conveyance "to any of its officers for the use of said corporation." This construction gives to each word a definite and reasonable meaning, and each word is appropriately used.

This court has held that where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be considered to have intended to mean what it has plainly expressed, and consequently no room is left for construction. It is not allowable to interpret what has no need of interpretation, or, when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend the meaning. "Statutes and contracts should be read and understood according to the natural and most obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation." (*City of Beardstown* v. *City of Virginia, 76* Ill. 34.) Section 9 of the charter as quoted shows that the legislature intended to exempt not only the property held "for the use of" the corporation, but also that held for its purposes. That these phrases may be used with different meanings is clearly shown by the reasoning of the opinion in *University* v. *People, supra.* By the charter of appellant, as in the *University case* just referred to, the corporation was authorized to take and hold property "for the use of or for the purposes of said corporation." This means that property acquired for its use is that which it uses as its institution, and that acquired for its purposes is that held and leased to produce revenue to be used in carrying out its purposes. If any attempt is made to give the word "use" any other meaning than "in trust" in the part of section 9 which refers to property "conveyed directly to said corporation or to any of its officers for the use of said corporation," then it would be necessary to deny the right

of the corporation to take property except that to be used for institutional property; and this was clearly not the intention of the legislature in granting this charter, for the fifth clause of the charter provides that the trustees shall manage "its real estate except such as is occupied by its institutions." Manifestly, the legislature provided for the investment in property and did not intend to limit appellant to the ownership of property used for occupancy by its institutions.

We think it is quite obvious from a fair construction of section 9 in connection with the rest of the charter that the legislature intended to exempt all of appellant's real estate from taxation, including all that owned and held by or for the use of said corporation, whether or not it was actually occupied by said corporation. This conclusion is strengthened by the construction that has always been placed upon this charter by the taxing authorities of Illinois and Cook county since the charter was granted until the levying of the assessment here under consideration,—that is, for full fifty years after the charter was granted. (*Citizens' Bank* v. *Parker, supra.*) We can reach no other conclusion even though we are in full accord with the statement of the United States Supreme Court in *Tucker* v. *Ferguson,* 22 Wall. 527, that "the taxing power is vital to the functions of government. It helps to support the social compact and give it efficacy. It reaches the interests of every member of the community. It may be restrained by contract in special cases for the public where such contracts are not forbidden, but the contract must be shown to exist. There is no presumption in its favor."

The decree of the superior court will be reversed and the cause remanded to that court for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*