(No. 23449.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* THE YOUNG MEN'S CHRISTIAN ASSOCIATION OF CHICAGO, Appellee.

*Opinion filed December 10, 1936—Rehearing denied Feb. 3, 1937.*

THOMAS J. COURTNEY, State's Attorney, and PHILIP H. TREACY, (HAYDEN N. BELL, JACOB SHAMBERG, WILLIAM P. KEARNEY, and BRENDAN Q. O'BRIEN, of counsel,) for appellant.

CUTTING, MOORE & SIDLEY, (WILLIAM P. SIDLEY, KENNETH F. BURGESS, WILLIAM H. AVERY, JR., and GEORGE RAGLAND, JR., of counsel,) for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook county in favor of appellee, the Young Men's Christian Association of Chicago, a corporation, in a suit for $6363.63 personal property tax for the year 1931. This tax was levied on the personal property of appellee located in the hotel owned and operated by it at 826 South Wabash avenue, Chicago. The corporation was chartered by a special act of the General Assembly approved February 22, 1861. This act as amended by an act approved February 21, 1867, provided in part: "This association may purchase, hold, enjoy and convey those certain lots and premises, situated in the city of Chicago in this State, known and described as follows, to-wit: [Here follows a description of real estate,] which shall be forever exempt from taxation, either by State, county, municipal or any other authority or organization, except as hereinafter provided, and this association shall also have power to purchase, hold,

enjoy, and convey other real estate for the purpose of establishing and maintaining free libraries and reading rooms and for benevolent and religious purposes, and the same while it shall be held or owned by or for said associa-. tion, for its own use, together with all personal property, held or owned by or for said association, shall be in like manner exempt from taxation, except as hereinafter provided." Section 2 of the amended charter provided that the association might have a seal and might acquire personal property by gift, lease, sale or otherwise. It also provided that. appellee might make such rules, regulations and by-laws and change the same to facilitate the management and control of its affairs. Section 8 provided: "In case the income of said association exceeds the expenses and disbursements necessary to carry on the objects of said association, the exemptions from taxation shall not apply to any such excess," etc. When both the original and amendatory acts were passed the 1848 constitution was in effect. By section 3 of article 9 it provided: "The property of the State and counties, both real and personal, and such other property as the General Assembly may deem necessary for school, religious and charitable purposes, may be exempted from taxation."

Appellee erected its hotel about twenty years ago. The personal property used by it in conducting the hotel, the cafeteria, news stand, laundry, haberdashery, etc., in conjunction therewith, is that sought to be taxed. No attempt to tax such property had been made prior to the levy for 1931. At the hotel appellee had eight paid secretaries and conducted church services and Bible classes on Sundays and vesper services every evening. Wednesday evenings it supervised discussion groups, and throughout the week the secretaries were available to guests at the hotel for counsel and advice. Reading rooms, a library and a room where billiards and other games were played were also furnished. A glee club and classes in dramatics were made available

to the guests. These various services, classes and facilities were free to those who cared to make use of them. Guests were not required to be members of the Y. M. C. A. The rates for rooms were seventy-five cents and a dollar per day, but persons unable to pay those rates obtained rooms for fifty cents. Appellee made loans to needy patrons without interest, and most of these were re-paid. Some clothing was given away by the association, but it had no regular department to dispense such assistance. Usually persons seeking relief were sent to relief agencies. The salaries of the secretaries were paid out of the proceeds from the hotel. In years when the receipts exceeded the expenses a sinking fund was set aside, and this was drawn upon during 1928, 1929 and 1930 to meet deficits. There were no salaries paid to officers of appellee, and the intention was to charge only enough to pay the hotel expenses, the salaries of the secretaries and the cost of church services, entertainments, etc. Appellee also had a deficit in its general operations, which was made up by contributions during each of the four years ending with 1931. The hotel was built following surveys made by appellee in 1911 and 1913 which disclosed that conditions in cheaper lodging houses and hotels in down-town Chicago were generally unwholesome.

Appellant contends that the operation of the hotel is *ultra vires* the corporation, that the association was chartered for benevolent and religious purposes, and that the operation of the hotel is not a charitable undertaking. It is true that if the operation of the hotel is *ultra vires* the corporation its personal property cannot be exempt. (*Illinois Central Railroad Co.* v. *People*, 119 Ill. 137; *Illinois Central Railroad Co.* v. *Irvin*, 72 id. 452.) It is equally true that if such operation is a charity the personal property is exempt. The definition of a charity, which we first adopted in *Crerar* v. *Williams*, 145 Ill. 625, is: "A charity, in a legal sense, may be more fully defined as a gift, to be

applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds and hearts under the influence of education or religion, * * * by assisting them to establish themselves in life * * * or by otherwise lessening the burdens of government." (See, also, *Congregational Publishing Society* v. *Board of Review,* 290 Ill. 108; *Skinner* v. *Northern Trust Co.* 288 id. 229; *In re Estate of Graves,* 242 id. 23. "Charity," in law, is not confined to the relief of poverty or distress or to mere almsgiving but embraces the improvement and promotion of the happiness of man. A charity is a gift to the general public use which extends to the rich as well as to the poor. The principal and distinctive features of a charitable organization are that it has no capital stock and no provision for making dividends or profits for private gain. It derives its funds mainly from public and private charity and holds them in trust for the objects and purposes expressed in its charter. The charitable nature of an organization depends upon whether its object is to carry out a purpose recognized in law as charitable, or whether it is maintained for gain, profit or private advantage. An institution does not lose its charitable character by reason of the fact that the recipients of its benefits who are able to pay are required to do so, where no profit is made by the institution and the amounts so received are applied in furthering its charitable purposes and those benefits are refused to none on account of inability to pay therefor. The reason for exemptions in favor of charitable institutions is the benefit conferred upon the public by them, and a consequent relief, to some extent, of the burden upon the State to care for and advance the interests of its citizens. (*Congregational Publishing Society* v. *Board of Review,* 290 Ill. 108, 112, 113; *School of Domestic Arts and Science* v. *Carr,* 322 id. 562, and cases there cited.) In the *Congregational Publishing Society case* we reviewed many decisions from this and other jurisdictions, and held that

the test to apply is whether the primary purpose of the institution is charitable, or whether its primary purpose is the making of a profit and the devoting of these profits to charitable purposes. In *Franklin Square House* v. *Boston,* 118 Mass. 409, the court held that the property of a corporation organized to provide a home for working girls at a moderate cost was exempt from taxation on the ground that it was a public charity even though the girls paid for their keep, the corporation having no capital stock and there being no profits divided among its members. In *Commonwealth* v. *Young Men's Christian Ass'n,* 116 Ky. 711, the corporate purpose of the association was to seek out young men, endeavor to bring them under moral and religious influence, secure their attendance at some place of worship, introduce them to members and the privileges of the association, secure them proper boarding places and employment and to surround them with Christian influences. The court, in holding that the association came within the constitutional term of a public charity, said: "Aside from that part of the religious work done by the appellees which may be denominated devotional, they undertake to bring within the religious, moral and intellectual influences of the institution all young men,—and, for that matter, old men too,— for their betterment, improvement and protection from evil influences and consequences. It is not so much the giving of alms or in aid of the mendicant; the endeavor is to reach the boys and young men before they need alms and before they are reduced to beggary, and by training their minds and teaching them how to use and preserve their bodies and how to live useful and honest lives, to save them from the lower grades of misfortune so familiar in the utter helplessness of abject poverty and disease and want."

Upon the state of facts shown by the record it is clear that appellee is a charitable organization engaged in charitable work. Its primary object is·charity—not the making of a profit. The rates charged for its rooms are not

based, alone, on the cost of the service rendered, but the object of appellee is to furnish wholesome living conditions to young men at a price they can afford to pay and thereby correct the social evils that surround men who would otherwise be compelled to live in cheap rooming houses, amid sordid environments. Appellee had the power to furnish living quarters for young men as it does, and it follows as a matter of course that it could furnish the incidental services necessary to the comfort of the lodgers. The restaurant, cafeteria, laundry and haberdashery were purely incidental to the furnishing of the rooms in which the men should live and were likewise exempt from taxation. The word "benevolent," found in the first section of the charter, means "charitable." *People* v. *Walters Chapter D. A. R.* 311 Ill. 304.

The other point made by appellant is that the legislature did not exempt from taxation property not immediately used by appellee for its own objects. While this point is perhaps obviated by our holding that the property sought to be taxed is being used for a charitable purpose, we will nevertheless discuss it.

Since appellee's amended charter was granted in 1867 its provisions must be construed in connection with the provisions of the constitution of 1848 rather than those of the 1870 constitution. (*Northwestern University* v. *People*, 99 U. S. 309; *Northwestern University* v. *Hanberg*, 237 Ill. 185.) Section 3 of article 9 of the earlier constitution provided that the legislature might exempt such property as it might deem necessary for school, religious and charitable purposes, and under the reasoning of the Supreme Court of the United States in *Northwestern University* v. *People, supra,* and of this court in *Northwestern University* v. *Hanberg, supra,* there can be no question that the legislature, under the 1848 constitution, could exempt all the property of appellee, both real and personal, had it desired so to do, and had it drawn the charter in such way as to plainly

express that intention. All that is then presented to us is a question of construction. All laws exempting property from taxation are to be strictly construed. (*Chicago Home for Girls* v. *Carr,* 300 Ill. 478.) It is not to be presumed that the legislature intended to exempt property from taxation, and such intention must affirmatively appear. (*People* v. *Theological Seminary,* 174 Ill. 177.) But this rule of strict construction in favor of the State does not relieve the courts of the duty to interpret the charter by the ordinary rules of construction and to carry out the intention of the legislature if it can be ascertained. (*Northwestern University* v. *Hanberg, supra.*) Decisions in which we have construed other charters are helpful only to the extent that the facts and circumstances, together with the language employed, are similar. The Supreme Court of the United States in *Northwestern University* v. *People, supra,* held that by the terms of the charter granted to the university in 1855 it was not necessary that the real estate owned by the university should be occupied or immediately used by it in order to be exempt from taxation. There the language was: "All property, of whatever kind or description, belonging to or owned by said corporation, shall be forever, free from taxation for any and all purposes." It was held that the university property was exempt so long as the profits from it obtained by way of rent or otherwise were devoted to educational purposes. In *Chicago Home for Girls* v. *Carr,* 300 Ill. 478, we held that a provision in a special charter under the 1848 constitution exempting property of the corporation from taxation and authorizing it to hold real estate "for the use of or for the purposes of said corporation," might include both property acquired for the use of the corporation and which it uses, and also property acquired for its purposes but which it leases for revenue to be used in carrying out its objects.

According to appellee's amended charter the real estate specifically described is forever exempt from taxation. The

association is also given the right to acquire "other real estate for the purpose of establishing and maintaining free libraries and reading rooms and for benevolent and religious purposes, and the same while it shall, be held or owned by or for said association for its own use, together with all personal property, held or owned by said association, shall be in like manner exempt from taxation, except as hereinafter provided." "In like manner" refers back to the exemption of the specifically described property and means "forever exempt from taxation." The phrase "for its own use" cannot be given the construction urged by appellant, that it means property actually used by appellee for its corporate objects. If that meaning were adopted it would render meaningless section 8 of the charter, which limits the exemption to the property and income actually necessary to meet the expenses and disbursements of appellee. The language of section 8, which must be given its ordinary meaning, explains the nature of the exemption granted in section 1 of the amended charter, and indicates the legislature's intention to permit appellee to hold property exempt from taxation the income of which shall be used for the objects of the corporation.

The construction which we place upon appellee's charter is in harmony with that placed on similar charters granted under the constitution of 1848 and with that placed upon it by the taxing authorities of Cook county, who had not sought to tax appellee's property since the charter was granted until the year 1931.

The judgment of the circuit court of Cook county is therefore affirmed.

*Judgment affirmed.*