2025 IL App (4th) 241012

NO. 4-24-1012

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 14, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| LINCOLN UNIVERSITY, a/k/a Lincoln College, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Logan County |
| LOGAN COUNTY, ILLINOIS; THE LOGAN | ) | No. 23CH7 |
| COUNTY BOARD OF REVIEW; JENNIFER | ) | |
| BRYANT, in Her Official Capacity as Chief County | ) | |
| Assessment Officer for Logan County, Illinois; PENNY | ) | |
| THOMAS, in Her Official Capacity as Treasurer for | ) | |
| Logan County, Illinois; and THE DEPARTMENT OF | ) | Honorable |
| REVENUE, | ) | William G. Workman, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Justices Lannerd and Vancil concurred in the judgment and opinion.

**OPINION**

¶ 1 At issue in this case is the continuing validity of a tax exemption granted by legislative charter the same year that the Civil War ended and while the namesake of the institution in question here still sat in the White House. The charter holder, plaintiff Lincoln University also known as Lincoln College (University), filed suit to establish that the exemption cannot be altered by any of the defendants pursuant to the normal administrative process that governs modern, use-based tax exemptions. The circuit court granted defendants' motions to dismiss the University's complaint on the basis that the University had not exhausted its administrative remedies. Because of the unique nature of a tax exemption created by the legislature pursuant to its authority under the 1848 Illinois Constitution (Ill. Const. 1848, art. IX, § 3), we hold that the University's

exemption is not subject to the administrative process for modification or elimination that applies to other use-based tax exemptions. Consequently, the University had no obligation to exhaust that administrative process, and the court erred in granting defendants' motion to dismiss. We therefore reverse and remand.

¶ 2                                    I. BACKGROUND

¶ 3                                    A. Complaint

¶ 4        The University initiated this matter by filing its complaint seeking declaratory and injunctive relief against defendants Logan County, Illinois; the Logan County Board of Review; Jennifer Bryant, in her capacity as chief county assessment officer for Logan County, Illinois; Penny Thomas, in her capacity as treasurer for Logan County, Illinois; and the Illinois Department of Revenue. We refer to the latter as "IDOR" and to the other defendants as the "County defendants." As discussed more fully below, our review of the circuit court's dismissal order is undertaken with acceptance of the truth of all well-pleaded allegations of the complaint. The following factual summary is, therefore, gleaned from those allegations.

¶ 5        The University is a not-for-profit corporation incorporated under a special act of the Illinois General Assembly approved on February 6, 1865 (1865 Ill. Laws 44) (Charter). The University previously offered two- and four-year degree programs for its students, as well as a master's degree program.

¶ 6        Section 9 of the University's original 1865 charter provides as follows: "All property, [of] whatever kind and description belonging or appertaining to the corporate body created by this act, shall be and forever remain free and exempt from taxation for any and all purposes whatever." 1865 Ill. Laws 48 (§ 9). The Charter was issued by the legislation pursuant to its authority under article IX, section 3, of the Illinois Constitution of 1848. Ill. Const. 1848, art.

IX, § 3.

¶ 7        In early 2022, the University decided to cease its teaching operations, and the last classes ended on May 13, 2022. Since early May 2022, the University has engaged in ongoing activities to wind up its affairs, including but not limited to "transitioning students to other educational institutions; completing audits and other activities required by the Higher Learning Commission and Department of Education; safeguarding and disposing of [the University's] assets and restricted funds; and paying liabilities and expenses." The University retains ownership of 21 properties.

¶ 8        In prior years, the assessor would send the University a blank certificate of status of exempt property form at the beginning of each tax year, which the University would complete and file with the assessor's office. See 35 ILCS 200/15-10 (West 2022) (requiring annual submission of an affidavit stating whether there has been any change in use in the property). The Logan County tax assessor's office recognized the University's tax-exempt status until the 2023 tax year.

¶ 9        In early 2023, the assessor's office had several conversations with the University concerning the tax-exempt status of its properties. Subsequently, the assessor notified the University that, despite the language of section 9 of the Charter, "she believes the [University] is no longer tax-exempt because [it] no longer provides educational activities or services." The assessor's office did not send the University an exemption certificate form in 2022 or 2023. Following its communications with the county assessor's office, the University filed its completed annual exemption certificate on August 21, 2023.

¶ 10        In September 2023, the assessor sent the University notices of tax assessments on its 21 properties. It is the county treasurer's intention "to collect the real estate property taxes for

tax year 2023."

¶ 11    Count I of the complaint sought a declaration that the University "is and forever remains" tax-exempt pursuant to section 9 of the Charter and section 7 of the Amended Charter. Count II sought an injunction "forever prohibiting" the County defendants from assessing, imposing, or collecting property taxes on the University's real estate and further prohibiting IDOR from directing the Logan County assessor's office to do so.

¶ 12                    B. Motions to Dismiss and Responses

¶ 13    IDOR filed a motion to dismiss the complaint pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2022)) asserting that (1) it failed to state a cause of action (*id.* § 2-615) and (2) the University failed to exhaust its administrative remedies (*id.* § 2-619). On the first point, IDOR argued that the complaint failed to allege any controversy between it and the University. IDOR argued "there has been no allegation that the [University] has discussed its exemption status with [IDOR]" or that it was "taking or even threatening to take any action to remove the [University's] exemption." Moreover, according to the motion, the allegation that IDOR could "at some future time consider and rule on the [University's] exemption under Section 15-25" was conclusory and insufficient to create an actual controversy between the University and IDOR.

¶ 14    On the second point, the motion to dismiss argued that the University had made no allegation that IDOR had denied, or even considered, the University's exemption or that the University had filed any papers under sections 15-25 or 8-35 of the Property Tax Code (Tax Code) (35 ILCS 200/8-35, 15-25 (West 2022)). Further, the motion argued that the University had failed to allege it had filed an application under section 16-70 as a "person who is assessed on property claimed to be exempt from taxation." *Id.* § 16-70. According to IDOR, without having taken or

- 4 -

pleaded these administrative steps, the University failed to implicate IDOR and failed to exhaust its administrative remedies, requiring the complaint to be dismissed.

¶ 15     The County defendants joined in IDOR's motion solely on the basis of failure to exhaust administrative remedies.

¶ 16     The University's response to the motions argued that it was not required to exhaust its administrative remedies because the local assessor lacked the authority to assess its property, which was tax-exempt pursuant to the Charter without reference to the Tax Code. Additionally, the University argued that the assessor could not assess exempt property absent a determination by IDOR that the exemption had been revoked, which IDOR had not done.

¶ 17                              C. Order of Dismissal

¶ 18     On May 20, 2024, the circuit court issued its written decision granting defendants' motions to dismiss. On the issue of failure to exhaust administrative remedies, the court noted that "the Illinois General Assembly had granted the University a complete and perpetual tax exemption for all property belonging or appertaining to [the University] for any and all purposes" and that this grant constituted "a contractual right which may not be impaired by the State." It further found that the University had "failed to allege that it has filed the required application under Section 16-70 with the County Board of Review to determine the tax-exempt status" and that it had "failed to make any allegation that it has filed with the Logan County Board of Review any application regarding the assessment of taxes on its property that it claims exempt." According to the court order, the University "has not taken the steps for this administrative review [under section 16-70] and exhaust[ed] the administrative remedies."

¶ 19     The circuit court further determined that, as to IDOR, the complaint was insufficient at law. "The allegation that [IDOR] could at some future time consider and rule on the

[University's] exemption under Section 15-25 is conclusory and not enough to create an actual controversy between the [University] and [IDOR]." The court dismissed IDOR pursuant to section 2-615, "as the pleading is insufficient at law."

¶ 20                                D. Motion to Reconsider

¶ 21        The University filed a timely motion to reconsider the circuit court's May 20 order, arguing that the court misapplied the law. According to the University's motion, it was not required to exhaust administrative remedies because its "tax exemption has not been removed or terminated in the first place and because the Tax Code "does not apply to Plaintiff's charter tax exemption." It further pointed out that the court's dismissal order did not explain how the assessor's belief "confers upon her the authority to 'deny' [the University's] tax exemption" and did not address how the University could have "lost its charter tax exemption." The University argued that the court's focus on the cessation of teaching shows that it was viewing its exemption as "a 'use' type of exemption" like those issued under the Illinois 1870 or 1970 Constitutions, ignoring "the broader type of charter exemption granted prior to 1870."

¶ 22        The University further argued that, even if the Tax Code applied to its charter tax exemption, the circuit court's order had failed to "take into account that the first obligation lies with IDOR to remove [its] tax-exempt status pursuant to Section 15-25 of the Code *** and only then would [the University] be required to file an application for an exemption." Thus, the University asserted, it was not required to utilize administrative remedies. Indeed, it claimed that it was IDOR that was required to act under section 15-25. However, IDOR never terminated or removed the University's tax-exempt status and did not direct the county assessor to do so.

¶ 23        In support of its motion to reconsider, the University offered several exhibits not previously before the circuit court. These included copies of defendants' answers to interrogatories

and the affidavit of Tiffany A. Worth, the University's vice president for finance and administration. The affidavit included copies of correspondence between the assessor and the University as well as between the assessor and IDOR. No objection was made to receipt of these materials.

¶ 24        Defendants reiterated that the University was required to submit its position to the board of review for administrative determination and that section 16-70 established a process for "any person who is assessed on property claimed to be exempt from taxation." *Id.* According to defendants, once the board renders its decision as to the continuing validity of the exemption, the University can file for judicial review. Defendants contended that the University "again attempts to confuse the issue in its motion to reconsider by arguing the merits of its exempt status without ever having undergone the administrative hearing process."

¶ 25                                    E. Order on Reconsideration

¶ 26        The circuit court denied the motion to reconsider, finding that it had not misapplied the law. According to the court, there was a "charter, a contract, if you will, between the State and the university or college." However, "the Court also believed that when the university/college executive committee approved the termination of the teaching at the college, which effectively ended, as even noted in the original complaint, effective May 13th, 2022, it ceased educational purposes at the college." The court explained, "this was a contract, but a contract is two sided. The State granted the benefits of being an exemption as long as the school was operating as a teaching, educational entity." It continued: "Here, we have no teaching institution still available, and that was the reasoning and the *** rationale of the Court for denying *** the injunctive relief."

¶ 27        According to the circuit court:

"The Court does believe that section [16-70] of the code does apply here. There

was not an exemption that was carved out for chartered exemptions. The property is one that I believe should go through the process as outlined in section 16-70, that the board of review should hear and determine. And that would be the process that—the administrative processes that need to be used in order for the question of whether or not that exemption still applies to this property should be utilized, not a request for an injunction as was put forth here."

¶ 28    This appeal followed.

¶ 29                    II. ANALYSIS

¶ 30    On appeal, the University argues that the circuit court erred by dismissing IDOR as party. It further argues that the local assessor had no authority to assess property rendered exempt, not by statute but pursuant to the Charter, so the University was not required to exhaust its administrative remedies before seeking to prevent the taxation of its property. We address each contention in turn.

¶ 31              A. Sufficiency of Claims Against IDOR

¶ 32    The University first argues the circuit court erred in dismissing its complaint against IDOR for failure to state a sufficient cause of action. Because this issue was raised in IDOR's section 2-615 motion, we review the dismissal *de novo*. *Heastie v. Roberts*, 226 Ill. 2d 515, 530-31 (2007). A section 2-615(a) motion accepts all well-pleaded facts while questioning whether the pleadings sufficiently state a cause of action. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 52; *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 320 (2008). Moreover, a section 2-615 motion considers "only the facts on the face of the pleadings." *Reynolds*, 2013 IL App (4th) 120139, ¶ 52. "In other words, the defendant in such a motion is saying, 'So what? The facts the plaintiff has pleaded do not state a cause of action against me.' " *Winters v. Wangler*, 386

Ill. App. 3d 788, 792 (2008). A circuit court should dismiss a cause of action under section 2-615 "only when it is clearly apparent that no set of facts can be proved that will entitle a plaintiff to recovery." *Id.* at 793 (citing *Hadley v. Ryan*, 345 Ill. App. 3d 297, 300 (2003)).

¶ 33        Section 2-701(a) of the Code of Civil Procedure provides that a circuit court may, "in cases of actual controversy, make binding declarations of rights, having the force of final judgments," including "the construction of any *** contract or other written instrument, and a declaration of the rights of the parties interested." 735 ILCS 5/2-701(a) (West 2022). The declaratory judgment statute is "liberally construed and should not be restricted by unduly technical interpretations" (*First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d 165, 174 (1995)), though its application must still comport with the general rule that "[c]ourts cannot pass judgment on mere abstract propositions of law, render advisory opinions, or give legal advice as to future events" (*Shipp v. County of Kankakee*, 345 Ill. App. 3d 250, 255 (2003)).

¶ 34        In *Illinois Gaming Machine Operators Ass'n v. City of Waukegan*, 2025 IL App (2d) 230431, ¶ 114, the court stated: "Declaratory relief is proper only if there is an actual legal controversy between the parties, *i.e.*, if there is 'a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof.' " See *Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 375 (1977). If the controversy is theoretical, rather than actual, then the claim is premature. *Adkins Energy, LLC v. Delta-T Corp.*, 347 Ill. App. 3d 373, 376 (2004).

¶ 35        However, if the parties' rights are fixed, *i.e.*, if "the controversy has progressed so far that there is nothing left for [them] to do except file suit for damages or other consequential relief," then the claim has been brought too late; there may be a claim for damages, but a declaratory judgment is no longer proper. (Internal quotation marks omitted.) *Illinois Gaming*

*Machine Operators Ass'n*, 2025 IL App (2d) 230431, ¶ 114. This is because the purpose of a declaratory judgment is to allow the parties to a dispute to "learn the consequences of their action[s] before acting." (Internal quotation marks omitted.) *Beahringer v. Page*, 204 Ill. 2d 363, 372-73 (2003). There must be "at least some future conduct that the declaration sought will guide." *Illinois Gaming Machine Operators Ass'n*, 2025 IL App (2d) 230431, ¶ 114.

¶ 36 The declaratory judgment procedure allows a "court to take hold of a controversy one step sooner than normally—that is, after the dispute has arisen, but before steps are taken which give rise to claims for damages or other relief. The parties to the dispute can then learn the consequences of their action before acting." (Internal quotation marks omitted.) *Buege v. Lee*, 56 Ill. App. 3d 793, 798 (1978). It is well settled that the declaratory judgment procedure "was designed to settle and fix rights before there has been an irrevocable change in the position of the parties that will jeopardize their respective claims of right." *First of America Bank, Rockford, N.A.*, 166 Ill. 2d at 174. The remedy affords "security and relief against uncertainty so as to avoid potential litigation." *Id.*

¶ 37 The complaint alleged the following respecting IDOR in paragraph 10:

> "The Illinois Department of Revenue ('IDOR') is named as a Defendant in this case. Pursuant to Section 15-25 of the Illinois Property Tax Code, IDOR has the authority to determine whether any property has been unlawfully exempted from taxation, or is no longer entitled to exemption, under the Code. *** IDOR also has the authority to direct the chief county assessment officer to assess the property and return it to the assessment rolls for the next assessment year."

IDOR is not mentioned after paragraph 10.

¶ 38 According to the circuit court, the complaint failed to allege that there was any

controversy between the University and IDOR.

> "The allegation that the Department could at some future time consider and rule on the Plaintiff's exemption under Section 15-25 is conclusory and not enough to create an actual controversy between the Plaintiff and the Illinois Department of Revenue. By not proceeding with the administrative process the Illinois Department of Revenue never had an opportunity to weigh in on this case."

The court noted that IDOR had taken no action and issued no official revocation of the exemption.

¶ 39 Here, no one disputes that there is a real and present controversy between the University and the local assessor due to the latter's attempt to reverse the exemption. The only question is whether IDOR should be excused from litigating that concrete issue. Regardless of how involved IDOR has been in that process to date, it is also not a stranger to it. Indeed, under the administrative process all defendants argue the University was bound to exercise, IDOR is the highest authority. IDOR and the local assessor are coordinate branches of government that share authority over the assessment and taxation process; a ruling effective as to one but not the other leaves a conspicuous gap in settling the concrete issues presented concerning the continuing validity of the University's exemption. Otherwise, IDOR would be free to declare the University's property exemption no longer valid and order the local assessor to assess its property, thus placing the parties in the same scenario presently before us. Thus, it is manifest that IDOR's presence in the litigation is not only proper, but it may be required for full resolution of the University's concrete dispute.

¶ 40 Accordingly, we reverse the circuit court's order dismissing IDOR. Because we have reversed on this point, we need not address the additional issues raised in the University's motion to reconsider or consider the additional evidentiary material submitted in connection with

that motion.

¶ 41                                    B. Exhaustion of Remedies

¶ 42          The University next argues that the circuit court erred in concluding that it had failed to exhaust its administrative remedies. According to the University, it was not required to exhaust its administrative remedies because the local assessor lacked the authority to assess the exempt property. The University asserts that its exemption is based on a legislative charter dating back to 1865, which made all University property "forever free and exempt from taxation for any and all purposes whatever."

¶ 43          Because the instant question on appeal was raised below in defendants' section 2-619 motion, we review the dismissal *de novo*. *Smith v. Hobart*, 2021 IL App (4th) 190756, ¶ 13. A section 2-619 motion admits the legal sufficiency of the complaint but raises defects, defenses, or other affirmative matter appearing on the face of the complaint or established by external submissions that defeat the claim. *Northwestern Illinois Area Agency on Aging v. Basta*, 2022 IL App (2d) 210234, ¶ 32; 735 ILCS 5/2-619(a)(9) (West 2022). Under section 2-619, the movant essentially says "yes, but"; *i.e.*, "Yes, the complaint was legally sufficient, but an affirmative matter exists that defeats the claim." (Internal quotation marks omitted.) *Reynolds*, 2013 IL App (4th) 120139, ¶ 31.

¶ 44                                    1. *The Doctrine and Its Exceptions*

¶ 45          The exhaustion of administrative remedies doctrine holds that a party aggrieved by an administrative decision cannot seek judicial review without first pursuing all available administrative remedies. *Johnson v. Department of Corrections*, 368 Ill. App. 3d 147, 150 (2006). This requirement allows the administrative agency the opportunity to consider the facts of the case before it, use its expertise, and allow the aggrieved party to obtain relief without the need for

judicial review. *Canel v. Topinka*, 212 Ill. 2d 311, 320-21 (2004).

¶ 46 There are, however, exceptions to the exhaustion doctrine. *Brandt Construction Co. v. Ludwig*, 376 Ill. App. 3d 94, 104 (2007) (citing *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 308 (1989)). Exhaustion of administrative remedies is not required where (1) an ordinance, statute, or regulation is attacked on its face or in its terms as unconstitutional on its face; (2) seeking administrative review would be inadequate or futile; (3) irreparable harm will result from the delay incident to further pursuit of administrative remedies; or (4) an administrative agency has no power to proceed because it lacks jurisdiction. *Castaneda*, 132 Ill. 2d at 309.

¶ 47 Here, the University argues that it need not have exhausted its administrative remedies because the local assessor lacked the authority to assess its exempt property. An administrative agency only has the authorization given to it by the legislature via statute. *County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546, 553 (1999). Thus, to the extent an agency acts outside its statutory authority, it acts without jurisdiction. *Id.*

¶ 48 Accordingly, we now turn to the University's tax exemption and whether the University's action to protect it is subject to the need to exhaust its administrative remedies.

¶ 49 2. *The University's Tax Exemption*

¶ 50 The 1848 Illinois Constitution provides, in pertinent part, as follows concerning the taxation of property: "The property of the state and counties, both real and personal, and such other property as the general assembly may deem necessary for school, religious, and charitable purposes, may be exempted from taxation." Ill. Const. 1848, art. IX, § 3.

¶ 51 Pursuant to this constitutional authority, the legislature included the following provision as part of the University's 1865 Charter: "All property, [of] whatever kind and description belonging or appertaining to the corporate body created by this act, shall be and forever

- 13 -

remain free and exempt from taxation for any and all purposes whatever." 1865 Ill. Laws 48 (§ 9).

The Charter has been amended by the University several times over the years following the process

specified by the legislature. See 805 ILCS 125/2, 3, 4 (West 2022). The original provision

concerning the nontaxable nature of the University's property, however, has remained unchanged

since 1865. See 1865 Ill. Laws 48 (§ 9). The history of charter-granted tax exemptions is explained

in *People ex rel. County Collector of Cook County v. Northwestern University*, 51 Ill. 2d 131, 135

(1972):

> "Prior to the adoption of the constitution of 1870, a large number of
> corporate charters had been granted by the legislature to private educational
> institutions. There were more than 80 such charters which contained some
> provision for tax exemption. Only a relatively small number of these institutions
> have survived. Whether the demise of the others was due to the inadequacy of the
> inducement offered by way of tax exemption or to other causes is unimportant in
> connection with the determination of this case. The purpose of the tax exemptions
> was, of course, to bring about the donation of money or property to the institutions.

> With the adoption of the constitution of 1870 the situation changed
> dramatically. That constitution prohibited the legislature from granting to any
> corporation any special privilege (art. IV. sec. 22), and with respect to exemption
> from taxation provided that such 'property as may be used exclusively for ***
> school *** purposes, may be exempted from taxation; but such exemption shall be
> only by general law.' (Art. IX, sec. 3.) And by general law the legislature exempted
> only that property of schools which was used exclusively for school purposes, and
> not leased or otherwise used with a view to profit.

Educational institutions established subsequent to 1870 therefore do not enjoy the same kind of tax exemption that is enjoyed by Northwestern University."

¶ 52　　　Several cases have followed *Northwestern University*'s analysis in addressing charter exemptions created prior to the 1870 constitution. See, *e.g.*, *People v. Young Men's Christian Academy of Chicago*, 365 Ill. 118, 124 (1936) (*YMCA of Chicago*) ("Since appellee's amended charter was granted in 1867 its provisions must be construed in connection with the provisions of the constitution of 1848 rather than those of the 1870 constitution."); *People ex rel. Gill v. Lake Forest University*, 367 Ill. 103, 110-11 (1937) (similarly worded charter exemption granted under 1848 constitution applied to the university's real estate whether or not occupied by the university or used for curricular activities).

¶ 53　　　In *YMCA of Chicago*, a tax was levied on the YMCA's personal property because the assessor determined it was not being used for a charitable undertaking. The YMCA, however, operated under a legislative charter granted in 1861 that designated its property as " 'forever exempt from taxation.' " *YMCA of Chicago*, 365 Ill. at 119. After reviewing the *Northwestern University* case and noting that the charter provisions "must be construed in connection with the provisions of the constitution of 1848," the court concluded that the property was "forever exempt from taxation." *Id.* at 124-25. Similarly, in *Chicago Home for Girls v. Carr*, 300 Ill. 478, 485-86 (1921), the court held that a provision in a special charter under the 1848 constitution exempting property of the corporation from taxation and authorizing it to hold real estate " 'for the use of or for the purposes of said corporation' " included both property acquired for the use of the corporation, and property it leased for revenue to be used in carrying out its objectives.

¶ 54　　　Here, the University's property tax exemption originates not from the Tax Code, but from the University's pre-1870 Charter, which was issued at a time when the legislature could

grant full exemptions from property taxation. See *Lake Forest University*, 367 Ill. at 105. The University's exemption likewise does not owe its continuing existence to the Tax Code or the discretion of taxing authorities.

¶ 55 In support of its contention that the tax exemption applies to all of its properties without regard to their use, the University relies on these words from the Charter: "free and exempt from taxation for *any and all purposes whatever*." (Emphasis added.) We do not agree with the University's construction of this phrase. Under the "last antecedent doctrine," relative or qualifying words, phrases, or clauses are applied to the words or phrases immediately preceding them and not to more remote words, phrases, or clauses, unless the contrary intention is apparent. *In re E.B.*, 231 Ill. 2d 459, 467 (2008). Here, application of the last antecedent doctrine leads to the conclusion that the words "any and all purposes whatever" refers to the antecedent word, "taxation." In other words, the property tax exemption was intended to extend to *any property tax* that would be imposed *for any purpose*. So, for example, the exemption applies to the general property tax, but it would also apply to a property tax intended to fund a school, sanitary district, library, etc. The phrase in question refers to the purpose of the *tax*, not the purpose of the landowner's *use* of its property.

¶ 56 However, we believe that the University's ultimate interpretation of the Charter is correct without need to resort to the "any and all purposes whatever" language. The Charter explicitly extends the exemption to the University's property without any qualification as to the use to which the property is being put. As a result of this plain language, the University's exemption differs dramatically from the use-based statutory exemption created by section 15-35 of the current Tax Code, which states that "all property of schools, not sold or leased or otherwise *used with a view to profit*, is exempt." (Emphasis added.). 35 ILCS 200/15-35 (West 2022). We

further note that section 15-65, which governs charitable exemptions, is likewise conditioned on the property being "*actually and exclusively* used for charitable or beneficent purposes, and not leased or otherwise *used with a view to profit*." (Emphases added.) *Id.* § 15-65.

¶ 57　　　　The legislative grant in the original Charter conferred a complete and perpetual tax exemption for all property "belonging or appertaining to" the University, and that exemption cannot be impaired by the State. See *Ruggles v. People*, 91 Ill. 256, 260-61 (1878); *Spring Hill Cemetery of Danville v. Ryan*, 20 Ill. 2d 608, 613 (1960). Having concluded that the University's exemption was not use-based and further that it arose from the Charter and not the Tax Code, we now look at the local assessor's authority to assess the exempt property.

¶ 58　　　　3. *Local Assessor's Authority to Assess the University's Exempt Property*

¶ 59　　　　Illinois law is clear that "public officials have no taxing power except that which is delegated to them by the legislature." *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 295 (2010). The Tax Code authorizes a local assessor to assess only nonexempt property. See *Carle Foundation v. Department of Revenue*, 2023 IL App (4th) 200121, ¶ 188. Specifically, section 9-70 states, in part, "[l]ocal assessment officers shall assess all other property *not* exempted from taxation." (Emphasis added.) 35 ILCS 200/9-70 (West 2022); see *Millennium Park Joint Venture, LLC*, 241 Ill. 2d at 296-97. Similarly, a local assessor has no *sua sponte* authority to unravel the previously awarded exemptions. *Carle Foundation*, 2023 IL App (4th) 200121, ¶ 188.

¶ 60　　　　　　　　　　　　a. Change in Use

¶ 61　　　　The County defendants argue that the local assessor had the authority to assess the University's property because its use changed when classes were terminated in May 2022. In support, the County defendants rely on the language of section 9-185 of the Tax Code, which states, in part, that a property owner must "notify the chief county assessment officer within 30

days" of any "change in use or a change in a leasehold estate," and that the "[f]ailure to give the notification, resulting in the assessing official continuing to list the property as exempt in subsequent years, shall cause the property to be considered omitted property for the purpose of this Code." 35 ILCS 200/9-185 (West 2022). They further rely on section 15-10(a) of the Tax Code, which provides that "[a]ll property granted an exemption by the Department pursuant to the requirements of Section 15-5 *** is exempt from taxation" and that, to maintain its exempt status, a property owner must "must file with the chief county assessment officer *** an affidavit stating whether there has been any change in the ownership or use of the property." *Id.* § 15-10(a).

¶ 62        The supreme court has instructed: "Each word, clause and sentence of a statute must be given a reasonable construction, if possible, and should not be rendered superfluous." *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 14 (citing *Chicago Teachers Union, Local No. 1 v. Board of Education of Chicago*, 2012 IL 112566, ¶ 15). Moreover, "[i]n determining the meaning of a statute, a court will not read language in isolation, but must consider it in the context of the entire statute." *Id.* (citing *In re Marriage of King*, 208 Ill. 2d 332, 343 (2003)).

¶ 63        Read in its entirety, section 9-185's language shows that its application is limited to a use-based exemption from taxation that arises under the Tax Code. 35 ILCS 200/9-185 (West 2022). Specifically, section 9-185 references "a use *exempt from taxation under this Code* to a use not so exempt." (Emphasis added.) *Id.* Similarly, section 15-10 further references all property "granted an exemption by the Department" under section 15-5. But the instant exemption arises not under any provision of the Tax Code but from the University's Charter. Defendants are arguing that the University should be required to exhaust an administrative process that cannot validate its exemption because it does not even speak to the validity of a charter-based exemption; the Tax Code does not even use the word "charter."

¶ 64　　　　As the circuit court correctly recognized, the Charter making the University's property tax exempt creates a contractual property right. See *University v. People*, 99 U.S. 309, 322 (1878) (recognizing Northwestern University's contractual right in its charter from the State of Illinois); *Ruggles*, 91 Ill. at 260-61. However, the court felt that the University has failed to meet its part of the contractual bargain by discontinuing its educational activities. This is a dramatic conclusion that would affect more than the University's tax exemption; it could conceivably affect the University's very existence. After all, the Charter established the University "for the promotion of general and professional education and theological instruction," and if it has, or will, fail its intended purpose, a fair question might be raised as to whether it may continue to exist under its current charter. If not, this would secondarily affect the taxability of its properties, but surely the primary question of the University's continued existence would be of even greater consequence.

¶ 65　　　　Furthermore, as noted by the University, if there is a question of whether the University has failed to meet its chartered purpose, statute provides the appropriate remedy. The Illinois Attorney General is authorized to pursue judicial dissolution of a not-for-profit corporation if it has exceeded its authority under law. 805 ILCS 105/112.50(a)(2) (West 2022). Neither the local assessor nor IDOR has been granted such authority. The most recent version of the University's charter contains a specific provision governing how it might be wound down after dissolution. We mention this existential issue not to suggest how it might be decided but simply to illustrate that such a weighty matter cannot be subject to determination by a local assessor or by the administrative process administered by IDOR.

¶ 66　　　　It is well settled that an exception to the administrative exhaustion doctrine exists where an administrative agency has no power to proceed because it lacks jurisdiction to declare the University's exemption to be at an end. *Castaneda*, 132 Ill. 2d at 309. For the reasons stated

above, the local assessor lacked the authority to assess the University's property, and IDOR's administrative process for reviewing more modern, use-based exemptions does not apply to the University's pre-1870 charter exemption. Because the assessor lacked authority, its assessment was improper, and the properties remain exempt. As a result, we find there was no need for the University to exhaust any administrative remedies before bringing suit to establish the impropriety of the assessor's negation of its exemption.

¶ 67                                     b. Defendants' Remaining Arguments

¶ 68         Defendants' remaining arguments all center on a party's obligations regarding exempt property under the Tax Code. Because we have already determined that the University's exemption was not a creation of the Tax Code, we reject these arguments.

¶ 69                                          III. CONCLUSION

¶ 70         For the reasons stated, we reverse the circuit court's order dismissing IDOR as a defendant and granting the remaining defendants' motion to dismiss for failing to exhaust its administrative remedies. The cause is remanded to the circuit court for further proceedings on the merits of the University's complaint in conformity with this order.

¶ 71         Reversed and remanded.

*Lincoln University v. Logan County*, 2025 IL App (4th) 241012

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Logan County, No. 23-CH-7; the Hon. William G. Workman, Judge, presiding. |
| **Attorneys for Appellant:** | James T. Jackson and Kathleen W. Pletsch, of Samuels, Miller, Schroeder, Jackson & Sly, LLP, of Decatur, for appellant. |
| **Attorneys for Appellee:** | Matthew J. Cate and Schuyler E. Frashier, of Barber, Segatto, Hoffee, Wilke & Cate, LLP, of Springfield, for appellees Logan County, Logan County Board of Review, Jennifer Bryant, and Penny Thomas.<br><br>Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Christina T. Hansen, Assistant Attorney General, of counsel), for other appellee. |